L. M. ROBERTS, Appellant,

v.

DALLAS RAILWAY & TERMINAL COMPANY, Appellee.

No. 4964.

Court of Civil Appeals of Texas.

El Paso.

Nov. 11, 1953.

Rehearing Denied Dec. 9, 1953.

Johnson & Mead, Rudolph Johnson, John J. Mead, Jr., J. Alex Blakeley, J. E. Aikman, Dallas, for appellant.

Burford, Ryburn, Hincks & Ford, Clarence A. Guittard, Dallas, for appellee.

FRASER, Justice.

This is a damage suit. L. M. Roberts, a feme sole, brought suit against the Dallas Railway & Terminal Company for injuries sustained while she was a passenger on one of appellee's buses. The case was tried before a jury in the 44th District Court of Dallas County, Texas, which resulted in a verdict for appellee. The motions of appellant to set aside the verdict and for a new trial were overruled on February 6, 1953. On February 6, 1953, appellant filed notice of appeal.

The jury exonerated the bus driver of all negligence, and found that he was acting under an emergency, and found that plaintiff did not receive any bodily injury.

Appellant complains of the action of the trial court in admitting records of the City-County Department of Public Welfare and parts of same, and records and parts of records of the State Department of Public Welfare. Appellant has treated all twelve points together in her argument in her brief.

Appellant's first point of error asserts that the records of the City-County Department of Public Welfare were hearsay, and immaterial and irrelevant and therefore inadmissible and their result was prejudicial.

Appellant's second, third, fourth, and fifth points of error assert that certain specific parts of the records of the City-County Department of Public Welfare were inadmissible and their admission was prejudicial to appellant. These items were notes and reports of case workers as to their conversations with and impressions of appellant, and statements of third parties about appellant. Some of these are herein reproduced:

"Miss Roberts had been to Parkland Clinic and expressed her many resentments to the doctors there and because they did not have separate floors for the negro and white patients."

"Miss Roberts also resents the attitude of the members of the Methodist Church, even though she is a member also. She states that she no longer attends services in any Methodist Church because the people going there are to hypocritical and make her feel unwanted and ill at ease. She has gotten a great deal of satisfaction out of attending services at a nearby Nazarine Church."

"Mrs. Holland said she could not accept the agency's system of payment and furthermore she did not want Miss Roberts in the house as she and other roomers there were afraid of her. Other roomers claim they have missed things from their rooms, jam, preserves, soap, etc. She also says Miss Roberts' actions are very mysterious.

She takes out bundles and boxes at night and brings in 'all sorts of junk'."

"Miss Roberts stated that her chief difficulty was that she was too good and people were always trying to swindle her out of something. She stated that she did not know why this was unless she just looks as if it could be done because all through her life that is what has happened to her."

Appellant's sixth point is in effect the same as points 2, 3, 4 and 5.

Her seventh point objects generally to the admission of the records of the State Department of Public Welfare for the same reasons as set forth in point one.

In points eight, nine and ten appellant assigns error in admitting specific portions of these records as being hearsay, and prejudicial as well as not relevant. They are here set out:

"Miss Roberts has been using apple crates for chairs. She is really a collector for junk. A junk dealer across the street gave her a lot of stuff she was going to have hauled away. Miss Roberts had this moved into her back yard. This consists of old cook stoves, old refrigerators, pieces of tin, wire and cardboard boxes. She told the worker the fire inspector had told her that she had to get this cleaned up, that it is a fire hazard."

"Mrs. Lillian May, 639 West 9th St. (WI–0960), called regarding Miss Luster Roberts. Mrs. May explained that she is a friend of Mrs. Nevada Webster, 1101 Walter Drive (WI–1018), who is distantly related to Miss Roberts.

"Mrs. May said she wanted to tell us Miss Roberts is ill and needs someone to take care of her, as she cannot get out of bed to do anything for herself. She doesn't think anyone would go to Miss Roberts' home to give her care and that she should be put in a hospital.

In fact, Mrs. May said the doctor who had examined her for her lawyer thought so too.

"When we questioned further in an effort to understand why a lawyer had sent Miss Roberts to a doctor, we were told that Miss Roberts has filed a suit against the Dallas Street Railway Company, for an injury she claims to have had nearly two years ago. The lawyer is Mr. Guy Carter and the physician, Dr. Frank Altick (DI–3939). There seems to be some question as to the professional responsibility on the part of both the lawyer and the doctor, as Mrs. May told us that Mr. Carter claims to have given Miss Roberts instruction for filing suit, but has not been retained for further service, while Dr. Altick said he was asked to examine Miss Roberts to determine the nature and extent of the alleged injury and not requested to give treatment."

"The worker then asked if she didn't feel that she needed to go to Parkland for a physical check-up. She said that she would not go to Parkland Hospital; in fact, she wouldn't take a dog to Parkland."

We feel that appellant's points 2, 3, 4, 5, 8, 9 and 10 are well taken. The most casual reading of the matters set forth above as excerpts from case workers' notes will illustrate that this evidence, both as individual items and from a cumulative point of view, was most prejudicial, and created an impression most unfavorable regarding appellant; picturing her as a petulant and difficult eccentric, as well as a petty thief. Indeed, one case worker went so far as to question the professional responsibility of her doctor and attorney. This was all read to the jury and was certainly of a highly prejudicial nature. We do not see the relevancy of this type of evidence, especially where the issues are the negligence of appellee and the injuries alleged by appellant. The suggestion that her lawyer and doctor were not responsible people would certainly be highly prejudi-

cial. This unhappy woman was not on trial, nor were her habits and eccentricities, nor her choice of doctor or lawyer.

█ Appellee insists that these parts of the said record were admissible as bearing on her earning power, financial situation, and the condition of her health. Those portions of these records reflecting these specific matters might conceivably be admissible, but the matters here complained of and set out go far beyond that, and in addition to being irrelevant and prejudicial are hearsay and double hearsay in some instances. Appellee insists that these matters come under the exception to the hearsay rule regarding public records of an official nature. We do not find that these items measure up to the requirements of such exception. The authorities clearly indicate that the exception applies to official records of a routine nature concerning events, reports, acts or returns of an official or employee, and certainly cannot be extended to include mere opinions and impressions of case workers and opinions of third parties conferring with case workers.

█ Appellee further urges that appellant waived her objections by failing to file a motion pointing out the specific portions of the records to which she objected. This rule, as illustrated in the cases cited by appellee himself, to-wit: Panhandle & Santa Fe R. Co. v. Cowan, Tex.Civ.App., 243 S.W. 912; Beverly v. Siegel, Tex.Civ.App., 51 S.W.2d 743; Brown & Root, Inc., v. Haddad, 142 Tex. 624, 180 S.W.2d 339, syl. 5; applies more to part of a unit such as an instrument, rather than a record consisting of miscellaneous papers and documents. The three cases cited by appellee involve an insurance policy, an accident report, and a sales account, but none refers to a mass of notes and documents. Coun-

sel objected to such record as a whole and also later to portions that had been read to the jury. He was given a full bill by the court and an understanding that he was objecting to all of the items. We do not feel that the fact that some items of this record might have been admissible opened the door to the entire record consisting of financial records and case work records. Counsel's objections therefore seem to have been adequate and well taken.

With regard to appellee's argument that probable injury must have been shown we have dealt with such earlier in this opinion and repeat here that the reading to the jury of matters such as these couldn't help but be harmful, and for example there may well have been a number of Methodists on the jury who might have resented the case worker's report of appellant's difficulty with and opinion of the members of that faith, and as a result have had no confidence in appellant's testimony.

█ All suits must be tried on evidence pertinent to the issues, and evidence tending to prejudice the minds of the jury should be excluded. Personal habits and characteristics of plaintiff are not a material issue. Each case should be tried on its merits alone and not on the merits of the parties. Eads v. Leverton, Tex.Civ. App., 152 S.W.2d 868; Hardin v. Fort Worth D. C. Ry. Co., 49 Tex.Civ.App. 184, 108 S.W. 490; Robinson v. Lovell, Tex.Civ. App., 238 S.W.2d 294, n. r. e.; Stone v. Day, 69 Tex. 13, 5 S.W. 642.

Points eleven and twelve are cumulative of preceding points and general in nature, and are overruled. We find for appellant on her other points of error.

Reversed and remanded.

HAMILTON, C. J., not participating.