The STATE of Texas, Appellant,

v.

CLOUD CONSTRUCTION CO. et al.,
Appellees.

No. 11865.

Court of Civil Appeals of Texas,
Austin.

Jan. 26, 1972.

Rehearing Denied Feb. 16, 1972.

Crawford C. Martin, Atty. Gen., Nola White, 1st Asst. Atty. Gen., Alfred L. Walker, Executive Asst. Atty. Gen., Watson C. Arnold, Woodrow Curtis, C. W. Pearcy, William R. Travis, Asst. Attys. Gen., Austin, for appellant.

Bowmer, Courtney, Burleson & Ferguson, Bob Burleson, Temple, for appellees.

O'QUINN, Justice.

This is a suit in condemnation, brought by the State of Texas to acquire 4.31 acres of unimproved land in Temple, Bell County, Texas, as additional right-of-way for Interstate Highway 35, which abuts the tract taken, in order to provide grade separations across the highway.

Upon a jury verdict the trial court awarded Cloud Construction Company, Inc., owner of the property, damages in the sum of $75,000. The State has appealed and brings sixteen points of error. We overrule all points of error and affirm the judgment of the trial court.

In the trial the State offered testimony, in rebuttal of evidence offered by the landowner that the Cloud tract had direct access to the main traffic lanes of I.H. 35, to the effect that it was an official policy of the Texas Highway Department that a landowner wanting access to the highway would be accorded such access only after approval by the State Highway Department and then only by way of a frontage or service road to be constructed when funds were available for its construction.

The State's testimony as to such policy was offered through a district maintenance engineer who had been assigned to the Temple area since 1954. Cloud Construction objected, and, out of the presence of the jury, the maintenance engineer was examined at length by counsel for both parties. At the conclusion of this proceeding the trial court sustained the landowner's objection to that part of the engineer's testimony which pertained to over-all policies of the State Highway Department, but announced that the witness would be permitted to testify "if he knows from his own personal knowledge that no one has been able to gain direct access to the highway before."

Thereafter, in the presence of the jury, the witness testified that access was allowed to main lanes of traffic on I.H. 35 at established grade crossings, that his division office had charge of permits concerning access, and that, to his knowledge, access has not been granted "at any point directly from adjoining property to the main lanes . . ." except at established grade crossings.

The district maintenance engineer testified, at the hearing out of the presence of the jury, that he did not participate in policy making of the highway department and that his knowledge of the plans and policies of the department was derived from oral instructions from superiors or from written memoranda. The State did not tender minutes of the State Highway Commission or other documentary proof of plans and policies of the department affecting access from private property to the main lanes of traffic on the highway.

The trial court properly excluded the testimony of the engineer as to general policy of the State Highway Commission with respect to access afforded property owners in reaching the main lanes of traffic. The Legislature in 1957 delegated authority to the State Highway Commission to "designate any existing or proposed" highway as a "Controlled Access Highway," through "proper order entered in its minutes." Article 6674w–1, Vernon's Ann. Tex.Civ.St. (Acts 1957, 55th Leg., p. 724, ch. 300, sec. 2). In general the State Highway Commission is directed by statute to "formulate plans and policies for the location, construction and maintenance of a comprehensive system of State highways and public roads." Article 6665, V.A.T.S. The Commission is required also to "maintain a record of all proceedings and official orders and keep on file copies of all road plans, specifications and estimates prepared by the Department under its direction." Article 6666, V.A.T.S.

The testimony of the division maintenance engineer as to plans and policies established by the State Highway Commission was hearsay and therefore no evidence as to access available from private property to the main lanes of traffic on

I.H. 35 under such policy. Belverman v. State, 16 Tex. 130 (1856); Roberts v. Dallas Railway & Terminal Co., 276 S.W.2d 575, Tex.Civ.App., El Paso 1953, writ ref. n. r. e. Further, parol evidence as to plans and policies of the State Highway Commission was not the best evidence of such plans and policies affecting access to the main lanes of traffic. Dallas County Water Control & Improvement District No. 7 v. Ingram, 395 S.W.2d 834, 841, Tex.Civ. App., Dallas 1965, no writ; Travis County Water Control and Improvement District No. 12 v. McMillen, 414 S.W.2d 450 (Tex. Sup.1966).

█ The State contends under its first two points of error that "The access rights were obviously material to the question of value and the State was harmed by not being allowed to support its opinions of value." The record shows that although William P. Cloud, who controlled the Cloud Construction Company, testified that the 4.31-acre tract had possible access to the main lanes of the highway, he admitted he had never discussed access with the highway department and that his concept of the highest and best use of the tract would not require direct access to the main lanes of traffic. Cloud conceded that he did not know whether such access would be approved, and that while "there was not any access . . . the grade was such that there could have been. . ." One witness for Cloud Construction on land value testified that he did not consider the tract as having direct access in arriving at value, but that if he had so considered the tract, his appraisal would have been higher. Another witness for Cloud Construction testified on cross examination that the Cloud tract did not have access directly to the main lanes of traffic and that frontage roads for similarly situated property in the general area afforded the only access for private property to the highway main lanes. The witness stated that his appraisal would have been unaltered even if the only access to the highway traffic lanes

was by means of frontage roads. As already observed, the district maintenance engineer was permitted to testify before the jury that to his knowledge access had not been granted at any point from adjoining property directly to the main lanes of the highway. Arguments of counsel for both parties have been brought forward, and we do not find that the question of access was argued to the jury by either party.

We overrule the points of error directed at the trial court's exclusion of testimony pertaining to plans and policies of the State Highway Commission as to access from private property to the main lanes of traffic on the highway.

The Cloud Construction tract is triangular, with its base bordered on the west by a railroad and with its apex pointing easterly toward a nearby grade crossing on I.H. 35. The southerly side of the tract adjoins the right-of-way of I.H. 35 for a distance of more than 1,000 feet, and the northerly side of the triangle adjoins Industrial Boulevard a distance of nearly 1,000 feet. Other property in the neighborhood of the Cloud tract is developed and used for industrial purposes, with no nearby retail commercial or residential development or uses. The only residential property located near the Cloud tract is situated on the opposite side of I.H. 35 from the tract, with the only nearby or convenient connecting link afforded by a grade crossing where Industrial Boulevard intersects the highway, a short distance from the apex of the Cloud 4.31 acres.

The State tried this case on the theory that the highest and best use for the Cloud tract would be for light industrial purposes, with only about an acre of the apex, nearest the grade crossing, devoted to a site for a retail service station. Cloud Construction adhered to the theory that the highest and best use for the entire tract would be for retail commercial businesses. These divergent approaches resulted in the offer by each party of purported comparable sales, limited by the State almost en-

tirely to sales of industrial property and by the landowner to sales of sites used for retail commercial businesses.

The State contends under seven points of error, briefed together, that most of the sales of retail sites offered by Cloud Construction were erroneously admitted in evidence. The State argues that these sales were of land located in well-developed commercial areas, four or five miles removed from the Cloud tract, and that in order to make the sales comparable to the Cloud acreage, the landowner's witnesses found it necessary to "adjust" such sales, and the prices paid, to the witness' opinion so as to call the sales "comparable" to the Cloud tract. It is the State's position that "adjustments" of these sales point clearly to a lack of comparability.

In this position the State relies on the holding in City of Garland v. Joyce, 462 S.W.2d 86, Tex.Civ.App. Waco 1971, writ ref. n. r. e., in which it was said, "To permit a witness . . . to relate to the jury sales of tracts obviously not similar, and then 'adjust' these sales and the prices paid to the opinion of the witness so as to call them 'comparable' is to set up an unlimited artificial standard by which almost any conceivable sale could be 'adjusted' so as to be made available in support of opinion as to value." (462 S.W.2d 88, col. 2)

Witnesses for Cloud Construction on the issue of value related to the jury sales of other properties, none of which was situated on the same side of I.H. 35 as the Cloud tract, but in almost every instance some four or five miles southerly from the Cloud tract, on the opposite side of I.H. 35, and in areas already developed for retail commercial uses, near busy traffic intersections, and close to extensive, built-up residential areas. The Cloud tract is in an area predominantly developed for industrial uses or entirely undeveloped, but with no residential or retail business development, or at least developed only to a negligible extent for such uses.

As conceded by one value witness for Cloud Construction, the comparable sales he offered, four to five miles southerly from the Cloud tract, were of land in "the hottest developing area of Temple," with "an intensive concentration there not only of residential back-up but of commercial activity." Exhibits in the form of aerial photographs confirm the testimony of a value witness for the State that the Cloud tract has "no residential back-up" and that there is no resident "purchasing power on that side of the highway." All residential development in the proximity of the Cloud tract lies on the opposite side of I.H. 35 and is without nearby or convenient traffic communication with the Cloud tract except by one grade crossing which ties into Industrial Boulevard a short distance from the Cloud property. Industrial Boulevard extends westerly and northerly from the Cloud tract, but does not serve any substantial residential area on that side of the highway and does not connect with highways leading into or toward Temple.

Witnesses for both parties were in agreement that the apex of the Cloud triangle was suitable for development as a site for a service station. The Cloud witnesses allocated different amounts of land for the service station, and all witnesses, for the State as well as for the landowner, placed a higher value on the station site than on the "back part" of the tract. The State's witness allocated a full acre for the service station, leaving 3.31 in the "back part" for light industrial uses. Cloud's witnesses consistently allocated the "back part" to commercial or shopping center uses.

■ Although the value witnesses for Cloud indulged in "adjustments" of purported comparable sales to such an extent as to render these sales unreliable and therefore inadmissible, it is noted that the jury's finding of value, or damages, falls $13,800.00 below the lowest value that any Cloud witness named for the entire tract. The jury's award of $75,000.00 exceeds the

highest figure introduced by the State by $30,000.00.

In City of Garland v. Joyce, supra, in which the value testimony, arrived at by "adjusting" purported comparable sales, was held inadmissible, the court noted that the jury adopted the testimony of the sole appraisal witness based on the fourteen sales which "were simply not sales of comparable property." In the case before us the jury did not adopt the value figures of any witness for either party. Even if the purported comparable sales offered by witnesses for the landowner be excluded from consideration, there remains sufficient evidence upon which the verdict of the jury reasonably could be based. Moreover, since it is obvious the jury did not adopt the value figures of any of the opinion witnesses, it cannot be said that the inadmissible sales clearly influenced the jury and were harmful to the State.

The State offered testimony as to sales of two service station sites which the witness stated were "nearest the Cloud" tract. One site sold at a rate of $19,000.00 an acre and the other site sold on the basis of $24,500.00 an acre.

There was other testimony, properly admitted, regarding sales of tracts devoted to retail business ranging in price from $15,000 to $20,000 an acre.

If the jury accepted the allocation by the State's witness of one acre as a site for a service station, at $24,500 an acre, and valued the remaining, or "back part" of the tract consisting of 3.31 acres, between $15,000 and $20,000 per acre, the finding of $75,000.00 by the jury was amply supported by evidence of probative force. It is settled that jurors reach their finding of value "by blending all of the evidence . . . aided by their own experience and knowledge . . . They are not compelled to credit all of the testimony of any witness or to reject all of it." City of

San Antonio v. Michalec, 418 S.W.2d 358, 362, Tex.Civ.App. San Antonio 1967, writ. ref. n. r. e., and cases there cited.

The State's witnesses arrived at values ranging from twenty-one cents a square foot to twenty-four cents per foot for the entire Cloud tract. The Cloud witnesses found values from forty-seven cents to fifty-four cents per foot, while William P. Cloud appraised his land at one dollar per foot for the service station site and fifty cents per foot for the "back part." The jury placed a value of thirty-nine cents per foot on the entire tract.

We consider the language of this Court, in an opinion by Associate Justice Hughes reviewing a similar instance of conflict resolved by the jury, applicable to the case at bar:

"In view of this disparity of opinion evidence, it seems to us that it was most appropriate for the jury to take a hand and apply . . . common sense and experience to a fair solution of this controversy. This we believe [they] did." City of Houston v. Hendrix, 374 S.W.2d 764, 766, Tex.Civ.App. Austin 1964, writ ref. n. r. e.

■ The State's remaining points of error, numbered eleven through sixteen, deal with sufficiency of the evidence, reference by counsel for the landowner to an award in another condemnation suit, and the cumulative effect of errors complained of by the State. We have disposed of the points with respect to sufficiency of the evidence, which we now overrule, and we have carefully considered the last two points, which we also overrule. The trial court properly instructed the jury to disregard reference to award in another suit, and, considering the jury's finding of value, it appears that the jury followed the court's instruction.

The judgment of the trial court is in all things affirmed.

Affirmed.