Ernestine Pamela MAGALLON,
Appellant,

v.

STATE of Texas, Appellee.

No. 16458.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 1, 1975.

Rehearing Denied May 29, 1975.

**478**

Bounds, Fitzgerald, McGilvray & Grimm, Martin J. Grimm, T. Wayne Harris, Houston, for appellant.

Carol S. Vance, Dist. Atty., Joseph T. Terracina, Chris Hanger, Kay L. Burkhalter, Asst. Dist. Attys., Houston, for appellee.

COLEMAN, Chief Justice.

This is an appeal from a judgment terminating the parental rights of Ernestine Pamela Magallon, the appellant. The case was tried to the court without a jury. A question involved on appeal is whether a social study authorized by Section 11.12 of the Family Code, V.T.C.A., and made part of the record of the suit as required by Section 11.12(d) constitutes evidence on which a judgment may be based.

The petition in this suit was filed by a representative of the Harris County Child Welfare Unit. It alleged that the termination of the parent-child relationship between the parents and the child would be in the best interests of the child. As grounds for termination the petition alleged that said mother has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional wellbeing of the child. In addition to requesting termination of the parent-child relationship the petition requested the appointment of Gene Lege, Director of the Harris County Child Welfare Unit, as managing conservator for the child.

The judgment terminated the parent-child relationship and ordered that Harris County Child Welfare Unit be appointed managing conservator of the child.

The case came on for trial on the 3rd day of June, 1974, at which time two witnesses were heard. Ernestine Magallon was called as an adverse witness. She testified that she was the mother of Baby Girl Magallon, the subject of this suit. She lives with Antonio Valdez, a friend of hers and her mother's. He rents rooms and six people were living there at the time of the trial. Three of these people were men whose names she did not know. She had been in this house only two days, having previously lived with her mother. Her mother required her to leave when she became involved in a fight between her sister and her sister's husband. She works for a man who sells Watkins Products and makes about $40.00 a month. Her rent is $5.00 per month. She stated that Mr. Valdez would help her take care of the baby and that she planned to get a better job. She testified that Mr. Flores was the father of the child and that they were not married. She has a history of epileptic seizures, but she testified that she had not had one for about three years. She was taking her medication for her epileptic seizures regularly. She had previously had an illegitimate child which was taken away from her by a welfare worker. At that time she had seizures by reason of her epileptic condition and she went to the Austin State Mental Hospital for treatment. This was in December of 1972. She stayed only about one month when she ran away because she was not used to living away from Houston.

She testified that if she was given the baby back she would find a baby sitter to keep the child while she was at work. At the time of the trial the child was four months old. She testified that the child was taken from her when it was about two days old. She realized that it would be her duty to take care of the child carefully and to provide her food and clothing; that she would have to take care of her real

good and take her to a doctor. She testified that she did not understand what was meant by "the emotional needs" of an infant. At the time of the trial she was pregnant. Louis Martinez, the father, had to go back to Mexico because his mother had died, but he said he was coming back.

Mr. Walter H. Ewing testified that he was a social worker employed by the Harris County Welfare Unit. He identified the social study and testified that while he did not prepare the instrument a case worker under his supervision did, and that there was nothing that he would like to add to or take away from it. At that time the State offered the report into evidence and the court stated: "The report is part of the record in this case." This report is found in the transcript of the record, and a copy of the report is attached to the statement of facts, but is not authenticated as a part of the statement. The transcript also contains a supplemental report dated August 1, 1974.

There is no expert testimony that the promiscuous behavior of the mother would adversely affect the emotional needs of the child. There is no testimony that the mother has engaged in conduct which endangers the physical wellbeing of the child.

▆ Evidence that the unwed mother of this infant child had one other illegitimate child and is pregnant should be considered by the court in determining whether a termination of the parent-child relationship is in the best interests of the child. Such evidence alone is insufficient to support a finding that such conduct endangers the emotional wellbeing of the four month old child. In the absence of testimony by a qualified expert that such conduct was reasonably calculated to endanger the emotional wellbeing of the child in the future, an inference that such danger exists could not be drawn from the permissible inference that the mother's conduct would continue unchanged into the future. The statute speaks of past conduct constituting a

present danger to the physical or emotional wellbeing of the child. Before a termination of the parent-child relationship can be ordered, the court must find such conduct and also find that a termination of the relationship is in the best interests of the child. The evidence is insufficient to support the judgment unless the trial court was authorized to consider as evidence the content of the social study.

Section 11.08 of the Family Code requires that the petition in a suit affecting the parent-child relationship shall contain a statement of the statutory grounds on which the request is made. Section 11.13, supra, authorizes a jury trial. Section 11.-14, supra, provides:

"(a) Except as otherwise provided in this subtitle, proceedings shall be as in civil cases generally.

"(b) . . .

"(c) A court may compel the attendance of witnesses necessary for the proper disposition of the petition, including a representative of the agency making the social study, who may be compelled to testify.

"(d) . . .

"(e) The rules of evidence apply as in other civil cases.

"(f) When information contained in a report, study, or examination is before the court, the person making the report, study, or examination is subject to both direct examination and cross-examination as in civil cases generally.

" . . ."

Section 11.15, supra, reads:

"The court's finding shall be based on a preponderance of the evidence under rules generally applicable to civil cases."

Section 15.02, supra, provides:

"A petition requesting termination of the parent-child relationship with respect

to a parent who is not the petitioner may be granted if the court finds that:

(1) the parent has:

.  .  .  .  .  .

(D) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; or

.  .  . and

"(2) termination is in the best interest of the child."

Section 15.05, supra, provides:

"(a) If the court finds grounds for termination of the parent-child relationship, it shall enter a decree terminating the parent-child relationship.

"(b)  .  .  .

"(c) If the court does not order termination of the parent-child relationship, it shall:

(1) dismiss the petition; or

(2) enter any order considered to be in the best interests of the child."

■■ Since Sections 11.14 and 11.15 of the Family Code provide that the rules of evidence apply as in other civil cases and that the court's finding shall be based on a preponderance of the evidence under the rules generally applicable to civil cases, we hold that the social study although a part of the record in the case is not evidence upon which the court's findings may be based unless such report is properly admitted into evidence. The court, when construing a statute, recognizes a presumption that the legislature intended effect to be given each provision of a statute. Section 11.12 of the Family Code requires the agency or person making the social study to file findings and conclusions. Section 11.14(f) contemplates that the person making the report will be a witness. Section 15.05 requires that the court enter a decree terminating the parent-child relationship if

it finds grounds for termination. However, if the court does not find grounds for termination this section authorizes it to enter any order considered to be in the best interests of the child. In making such an order the court would be authorized to consider the social study. In addition the social study might be a valuable source of information in preparation for the trial of the case. A social study is not required in termination proceedings, and in view of the legislative directive that the ordinary rules of evidence apply, we do not find an intent on the part of the legislature in directing that the report be made part of the record of the case to make admissible in evidence a record which might otherwise not be admissible.

In Hickman v. Smith, 238 S.W.2d 838 (Tex.Civ.App.—Austin 1951, writ ref'd), the court stated:

"Appellants' last point is that the court erred in admitting in evidence and in considering a written report prepared by a representative of the Department of Public Welfare. This report dealt with the matters mentioned in Sec. 2, Art. 46a, V.A.C.S. The fact that much of the report may be technically hearsay evidence is unimportant. Section 2, supra, requires an investigation be made and that the results be submitted to the court in a written report, and authorized the Department of Public Welfare to make such investigation. The court was duty bound to read and consider the report and give it such weight as it deserved."

Other adoption cases have followed this rule. See Alexander v. Clower, 486 S.W. 2d 189 (Tex.Civ.App.—Tyler 1972, no writ); In Re Jones, 475 S.W.2d 817 (Tex. Civ.App.—Eastland 1972, writ ref'd n. r. e.). Such reports have also been considered by the court in child custody cases. See Erwin v. Erwin, 505 S.W.2d 370 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ); Cooksey v. Perkins, 263 S.W.2d 952 (Tex.Civ.App.—Galveston 1954, writ ref'd n. r. e.); Crawford v. Crawford, 256

S.W.2d 875 (Tex.Civ.App.—Amarillo 1952, no writ); Luman v. Luman, 231 S.W.2d 555 (Tex.Civ.App.—Texarkana 1950, no writ).

The preceding discussion of various provisions of the Family Code, we think properly distinguished the case at hand from these cases.

Since this case must be reversed, we call attention to certain decisions which may be helpful to the court on retrial.

In Smith v. Riviere, 248 S.W.2d 526, 530 (Tex.Civ.App.—Texarkana 1951, no writ), three properly authenticated photostatic copies of navy medical reports dealing with the plaintiff's mental and physical condition were admitted in an action to cancel a deed on the ground that the plaintiff had been mentally incompetent at the time of its execution. These reports indicated not only the finding of the navy's medical board as the result of their examination but also detailed the man's life from the age of six, his alleged excessive drinking habits over the years, shock treatment given in a medical center prior to his entry into military service and his apparently paranoid beliefs which were symptoms of his mental incapacity. The court held that the provisions of Article 3737a, Vernon's Tex.Rev.Civ.Stat.Ann., and a federal statute did not authorize the introduction in evidence, over objection, of the portions of the report constituting hearsay evidence. The court stated:

"Neither statute expresses or implies an intent to abrogate the well-settled principle of the common law of the admissibility of the hearsay evidence based on further hearsay evidence. As stated in 20 Am.Jur., p. 766, and applicable here, 'Documentary evidence, when offered in evidence is subject to the same rule of evidence respecting relevancy, competency or materiality as to oral testimony.' (citing cases)"

In Roberts v. Dallas Railway & Terminal Co., 276 S.W.2d 575 (Tex.Civ.App.—El Paso 1953, writ ref'd n. r. e.), a personal injury case, it was held error to admit in evidence city-county public welfare records containing excerpts from case workers' notes as to the plaintiff's habits and eccentricities and which questioned the professional responsibility of her doctor and attorney. At page 578 the court stated:

". . . Appellee insists that these matters come under the exception to the hearsay rule regarding public records of an official nature. We do not find that these items measure up to the requirements of such exception. The authorities clearly indicate that the exception applies to official records of a routine nature concerning events, reports, acts or returns of an official or employee, and certainly cannot be extended to include mere opinions and impressions of case workers and opinions of third parties conferring with case workers."

In Cross v. Houston Belt & Terminal Railway Company, 351 S.W.2d 84 (Tex. Civ.App.—Houston 1961, writ ref'd n. r. e.), the defendant's doctor witness was permitted to read a medical report from the Houston Speech & Hearing Center. The report was not proven as a hospital record under Article 3737e and Judge Werlein indicated that if it had been so proved, it would have been admissible. At page 87 Judge Werlein stated:

"While it is true a physician may relate as a basis for his opinion and not as independent evidence to establish the fact, the history given him by the patient, we know of no authority holding it permissible for a doctor to read in evidence another doctor's unproven diagnosis or report, regardless of whether he has based his opinion in whole or [in] part thereupon . . . ."

In Texon Drilling Co. v. Elliff, 216 S. W.2d 824 (Tex.Civ.App.—San Antonio

1948, writ ref'd n. r. e.), certain Railroad Commission reports were received in evidence but the court excluded certain comments as to whether the well sands had been drained by the blow-out. The trial court's action was affirmed, the court holding that the opinions and conclusions from an undisclosed person not subject to cross-examination were not admissible under the provisions of Article 3737c, Tex.Rev.Civ. Stat.Ann.

In 30 Texas Law Review 112, there is a helpful discussion of the admissibility of evaluative reports of public officials and the question of whether the opponent of such a record should be compelled to call the party making the report in order to question its authenticity.

The record clearly indicates that there was a formal presentment of the Welfare Department's report in evidence and the question is as to whether this offer was accepted by the trial court. A formal acceptance does not appear necessary where the record reflects that an offer was made and that the proffered evidence was then treated as being before the court. Farrell v. Evans, 517 S.W.2d 585 (Tex. Civ.App.—Houston [1st] November, 1974, no writ). The trial court apparently did not consider it necessary to admit the report into evidence since it was already "in the record." Since the social study is not in the approved statement of facts, it has not been considered by this court.

If such a report is received in evidence in a trial before the court, the inadmissible portions of the report should be disregarded, and it will be presumed that the law did not consider evidence which was incompetent as hearsay. Alexander v. Clower, 486 S.W.2d 189, 191 (Tex.Civ.App. —Tyler 1972, no writ).

Reversed and remanded.