Maria BECERRA, Appellant,

v.

Nicolas GARIBALDO, Appellee.

No. 981.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 29, 1975.

Rehearing Denied Sept. 18, 1975.

J. A. Canales, Canales & Garza, Corpus Christi, for appellant.

Neal Dancer, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is an appeal from an order that granted a change in the custody of a minor child. Nicolas Garibaldo, the petitioner and natural father of the child Michael Anthony Garibaldo, instituted suit to change the custodial provisions in an order previously made that placed custody of the child in Maria Becerra, respondent, the child's maternal aunt. Trial was to a jury which found in petitioner's favor. Judgment was entered in the verdict. Maria Becerra has duly perfected an appeal from that judgment.

A brief history of prior litigation affecting the parties is necessary to an understanding of the case presented by this appeal. Nicolas Garibaldo, appellee herein, and his former wife, Amada Garibaldo, were divorced by decree of the Court of Domestic Relations of Nueces County, Texas, on February 8, 1971. The decree awarded the custody of Michael Anthony Garibaldo (Michael), then two years of age, and Patricia Garibaldo (Patricia), then twelve years of age, children of the marriage, to Maria Becerra, appellant herein, with each parent having "the right of reasonable visitation with the said minor children". On September 26, 1973, appellee filed a suit against appellant and asked for a change of custody of the minor children. The suit was docketed as Cause No. 119,541. The case proceeded to trial before the court without the aid of a jury. On December 18, 1973, the trial judge orally announced from the bench that the petitioner, Nicolas Garibaldo, shall have the right to have the children with him on certain specified dates, but that their custody shall remain in Maria Becerra. The judgment in that Cause (No. 119,541), however, was not signed by the trial judge until October 29, 1974. The judgment, reduced to writing the oral pronouncements made on December 18, 1973.

The petition in the case now on appeal, which was docketed in the trial court as

Cause No. 74–1995, was filed on June 26, 1974, approximately 6 months after the oral pronouncements were made in Cause No. 119,541, and 7 months prior to the rendition of judgment in this case, Cause No. 74–1995. The jury, in response to the one special issue which was submitted, found that "since December 18, 1973, there has occurred such a material and substantial change of condition that under the existing circumstances and conditions it would be in the best interest and welfare of the said Michael Anthony Garibaldo to change his custody to Nicolas Garibaldo."

■ Appellant, in her first point, contends that "the trial court erred in not dismissing this case for lack of jurisdiction because the same case was pending in Cause No. 119,541, thereby committing fundamental error". The point cannot be sustained. This case, Cause No. 74–1995, proceeded to trial on October 29, 1974, and the judgment in Cause No. 119,541 was signed on the same date. Appellant, after announcing ready and after the first witness had started testifying, orally moved that the case be dismissed because Cause No. 119,541 was still pending. While the record is not clear as to the hour that the judgment in Cause No. 119,541 was actually signed, apparently it had already been signed when appellant made her motion. The trial court overruled the motion and that ruling is not attacked in this appeal. Appellant then proceeded to defend against the suit that had been brought against her and docketed as Cause No. 74–1995. The judgment in the case presented by this appeal was rendered on January 15, 1975, which was long after the judgment rendered in Cause No. 119,541 could be set aside by the trial court on its own motion, or by action upon a motion for new trial. The question here is not one of "pendency", since it is conclusively established by the record that on January 15, 1975, the date the judgment was rendered in Cause No. 74–1995, that Cause No. 119,541, was not a "pending case".

*Ex parte Godeke,* 163 Tex. 387, 355 S.W.2d 701 (1962), relied upon by appellant, is not in point. There, the judgment, which was rendered by the Milam County District Court on December 21, 1961, was still subject to judicial vacation or attack by motion for new trial when the Nueces County Court of Domestic Relations rendered its judgment on December 29, 1971. Here, the trial court had completely lost all jurisdiction of Cause No. 119,541 on the date that judgment was rendered in Cause No. 74–1995. Fundamental error is not presented by the record. Appellant's first point is overruled.

Appellant's second point, wherein she complains that it was error to allow Michael, who was almost six years old at the time of trial, to testify before the jury, must be sustained. When Michael was called as a witness by appellee, appellant objected because of his tender age and immaturity. The objection was overruled. The child's answers to many of the preliminary questions asked by the trial judge were completely unresponsive. The oath was then administered to the child who testified that he wanted to live with his father. Following other unresponsive answers to questions propounded to the child, counsel for appellant renewed his objection, and moved that the child's testimony be stricken from the record. The trial court denied the motion at that time and said that he would carry it with the case, even though the court had already declared the child incompetent to testify as a witness. Nothing further was done with respect to either the motion or the child's testimony.

■ There is no civil statute in this State which fixes the age at which children are competent to testify in court, but at common law, in civil cases, children who are at least fourteen years of age are presumed to be competent; under that age, no presumption prevails and the matter rests within the sound discretion of the court. *Westbrook v. Texas & P. Ry. Co.,* 203 S.W.2d 279 (Tex.Civ.App.—Eastland 1947, writ ref'd n. r. e.). The record shows that the child did

not understand most of the questions asked, and showed complete ignorance regarding the consequences of false swearing. "Before a ruling admitting a child of tender years to testify should be permitted to stand, there should be something to show that he has some appreciation of the wrong of false swearing". *North Texas Construction Company v. Bostick,* 98 Tex. 239, 83 S.W. 12 (1904). There was no showing of such appreciation in this case. Furthermore, there was no showing that Michael was of sufficient maturity to express a wish as to his managing conservator. It was error to permit the child to testify. Appellant's second point is sustained.

The previous judgment which placed Michael, then just over two years of age, in the custody of appellant, having become final long before suit was filed in this case, was res judicata of the child's best interest and of his custody. *Taylor v. Meek,* 154 Tex. 305, 276 S.W.2d 787 (1955). However, proof of a material change of conditions and circumstances since the rendition of that decree will support a change of custody if such would be in the best interest of the child. *Bukovich v. Bukovich,* 399 S.W.2d 528 (Tex.Sup.1966). But, the changed conditions must be such "as affects the welfare and best interests of the child and be of such nature that to leave the custody of the child as previously adjudicated would be injurious to the child and requires that the custody be changed." *Dohrmann v. Chandler,* 435 S.W.2d 232 (Tex.Civ.App.—Corpus Christi 1968, no writ). A slight change in conditions does not warrant a change in custody of children. *Short v. Short,* 163 Tex. 287, 354 S.W.2d 933 (1962).

It is a well settled rule in this State that in a suit whose object is the change of custody of a minor child, or children, as the case may be, the non-custodian, such as the father in this case, has the burden of proving that a material change of conditions has occurred since the rendition of the prior decree before a court can change or modify the custodial orders previously made. *Knowles v. Grimes,* 437 S.W.2d 816 (Tex. Sup.1969). In this case, we have two prior decrees that placed custody of Michael with appellant. In the original decree of divorce between appellee and Amada Garibaldo, rendered on February 8, 1971, appellant was "awarded" the custody of the children. In a subsequent judgment which was orally pronounced on December 18, 1973 but which was not actually signed until October 24, 1974, it was provided that the custody of Michael (and his sister, Patricia) "shall remain in Maria Becerra".

In child custody proceedings, the jury's findings are binding upon the court if they are supported by evidence of probative force. *In re Y,* 516 S.W.2d 199 (Tex.Civ. App.—Corpus Christi 1974, writ ref'd n. r. e.).

In a jury case, where there is no evidence of a material change of conditions that affects the best interest and welfare of the minor child subsequent to the rendition of the judgment which placed the child in the custody of a certain person or institution, as the case may be, the trial court, should, upon a motion for an instructed verdict by the custodian, grant the same, and refuse to change the custodial provisions contained in the former judgment. Where a material change of conditions has been established by the evidence, the question then to be resolved is whether the best interest and welfare of the child would be served by changing custody from the custodian to the non-custodian. *De Gaish v. Marriott,* 345 S.W.2d 585 (Tex.Civ.App.— San Antonio 1961, no writ). If there is evidence of probative force from which reasonable minds might have reached the same conclusion as that reached by the jury, then the evidence is sufficient to support the jury's finding, and the trial judge would be required to render judgment in keeping with the jury finding. *Kirchner v. Van Skike,* 410 S.W.2d 467 (Tex.Civ.App.—Tyler 1966, no writ). If, however, there was merely some evidence to support such finding, the trial court could, as in any other

civil case, grant a new trial, either on his own motion, or in response to a formal motion for new trial, if he was of the opinion that the evidence was factually insufficient to support the jury's finding, or that the finding was so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re Y,* supra. The trial judge, however, could not disregard such finding, substitute his own finding for that of the jury, and render judgment contrary to the jury's finding. Thus, a judgment non obstante veredicto would be improper.

■ Appellant, in her third point, says that there was "no evidence" of a material change of conditions since December 18, 1973. In disposing of that point, a law point, we consider only the evidence that supports the jury's finding, and disregard all evidence contrary thereto. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.Sup.1965). She further says, in her fourth point, that the evidence is "factually insufficient" to support the jury's finding, and, in her fifth point, that the finding "was against the great weight and preponderance" of the evidence. The "factual insufficiency" and the "against the great weight and preponderance of the evidence" points require us to review and weigh all the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, "No Evidence" and "Insufficient Evidence", 38 Texas L.Rev. 359 (1960).

The special issue which inquired into whether or not there had been a material change of conditions "since December 18, 1973" is not challenged by anyone in this appeal. Both appellant and appellee tried the case on the theory that the last judgment was rendered on that date. The trial court, at various times during the trial, limited the questions relating to alleged change of conditions to those that occurred since that date. No one objected to the limitations so imposed by the trial court. There is no point or cross point relating to the ruling by the judge or to the submission of the issue.

After both sides had rested and before the charge was read to the jury, the trial judge asked appellee's counsel:

"Are you admitting that the children, the child, the subject of this suit, was with Maria Becerra by virtue of the judgment that was rendered by the Court on December 18, 1973?"

Counsel answered:

"Yes, sir."

Under the circumstances, we consider that the judgment which was not signed until October 29, 1974 merely reduced to writing the judgment that was orally made on December 18, 1973.

We first consider only the evidence that tends to support the jury's finding and the judgment that was rendered prior thereto. Appellee married his second (and present) wife, Balbina Garibaldo (Balbina) on May 19, 1973. She testified that she enjoyed having Michael in her home; that Michael was very happy to be with his father, and that a good relationship existed between the two; that appellant and the other women who either lived in appellant's house or were frequent visitors there, including Patricia (Michael's sister), who was sixteen years of age at the time of trial, and Amada Little, appellee's divorced wife and the mother of Michael, would call appellee vile, obscene and vulgar names when he would come for Michael, and that they used these words in the presence of Michael; that on June 7, 1974, when she and appellee went to appellant's house for Michael, she saw appellant put some "blue stuff" in Michael's mouth, and that he was crying at the time. She also testified that appellant, while parked in an automobile in proximity to the place where she (Balbina) worked, spanked Michael and pushed him to the floor of the car because he (Michael) waved at her (Balbina).

Appellee's employer testified that Michael would cling to his father "like he doesn't want to leave him" when appellee

was preparing to return Michael to appellant; that on one occasion just after appellee had obtained Michael from appellant, that Balbina brought him over to his house, that he had been crying, and that his lips were swollen. He also stated that it was obvious that appellee's love for Michael "was reciprocated by the boy".

Appellee testified that he loved his son; that at the time of the divorce in February, 1971, he did not have a suitable home for his children, but that he has since remarried and can now provide Michael with a good home; and that he wants the child to live with him. When he was asked on cross-examination to enumerate the changes in conditions which occurred since December 18, 1973, he replied: "Well, he is under very much pressure, sir, because when I take him home every other weekend, I have to comfort him for an hour, hour and a half; he comes in just as if he were frightened; he doesn't play right, won't play right until later, he starts playing right". He further stated that "they look after him a little bit badly".

While there is no evidence of physical abuse or mistreatment of Michael by appellant, either before or after December 18, 1973, there is some evidence that Michael suffered emotional stress when he was returned to appellant, that it required a short interval of time to adjust to being with appellee when appellee picked him up from appellant, and that appellee's home was a suitable home for the child. There is also evidence that appellant and others in her home used foul and vulgar language in the presence of the child. There is some evidence to support the jury's finding. Appellant's third point is overruled.

We next consider the "factual insufficiency of the evidence" and the "against the great weight and preponderance of the evidence" points. In doing so, we review and weigh all of the evidence.

In addition to what has already been summarized with respect to appellee's testimony, appellee was asked:

"Did you have any trouble at all about the child (Michael) up until the time you got married to this lady (Balbina) here?"

He responded:

"Well, before, no, but when they found out that I was going to get married, yes".

Appellee was then asked:

"Have you had trouble since December 18, 1973 in seeing your child?"

He answered:

"No, I haven't had problems since then".

Appellant, in addition to testifying herself, called several witnesses, and introduced several exhibits. Included in the exhibits are several photographs. One, which was taken in appellant's home after Michael had spent a month with appellee, shows Michael in the arms of Patricia, his sister; he is smiling and appears to be happy. Another, which was also taken in appellant's home, was taken on the day that appellee "was told by the court to bring Michael back"; Michael and appellant are embracing; each are smiling, and are, apparently, happy.

There is testimony from a disinterested witness who was well acquainted with the parties to this suit. She said that she had never seen Michael, while in appellant's house, under stress or under any type of "psychological conditions" that would upset him; that she had never heard appellant use any foul language; that she had never seen any person in appellant's home bathe or cover Michael with any type of blue substance; that she had been in appellant's home on five or six occasions when appellee and his wife brought Michael back to appellant's home, and that Michael appeared to be happy to return to appellant's home; and that there was no resentment in appellant's home towards appellee. Another disinterested witness testified that appellant "is doing a good job of raising the boy". Patricia testified that she had never seen her little brother mistreated by appellant;

that Michael was happy in appellant's home; and that she had "never heard any bad words in the household".

Consideration of all the evidence compels us to hold that the evidence is factually insufficient to support the jury's finding, and that the finding upon which the judgment was based is so against the great weight and preponderance of the evidence as to be manifestly unjust. The love of appellee for his son, appellee's remarriage and the acquisition of a suitable home, without more, are not sufficient to support a change of custody in this case. *Smith v. Clements,* 424 S.W.2d 326 (Tex.Civ. App.—Amarillo 1968, writ ref'd n. r. e.); *Fontaine v. Fontaine,* 325 S.W.2d 428 (Tex. Civ.App.—Dallas 1959, no writ). Appellant's fourth and fifth points are sustained. Accordingly, the judgment of the trial court is reversed and the cause is remanded for a new trial.

Reversed and remanded.