**Ruby FLETCHER, Appellant,**

v.

**TRAVIS COUNTY CHILD WELFARE DEPARTMENT, Appellee.**

**No. 12441.**

Court of Civil Appeals of Texas, Austin.

July 14, 1976.

Rehearing Denied Aug. 18, 1976.

Donald R. Flournoy, Austin, for appellant.

Jacqueline Strashun, Jed I. Oliver, Juvenile Court Staff Attorneys, Austin, for appellee.

O'QUINN, Justice.

This action, brought in June of 1975 by the Texas State Department of Welfare, acting through the Travis County Welfare Unit, seeks termination of the parent-child relationship of Ruby Fletcher, and three male respondents, as parents of three minor children.

After hearing in December of 1975, the district court of Travis County terminated the relationship of each parent with the children and appointed the Welfare Unit permanent managing conservator of the three children.[1]

Ruby Fletcher has appealed and brings three points of error. Appellant contends that (1) there was no evidence to support the judgment, (2) that the findings in the judgment are against the great weight and preponderance of the evidence, and (3) that the evidence relied on by the court was insufficient to support the judgment. We will overrule all points and affirm the judgment of the trial court.

The mother of the children answered and contested the action. Each of the fathers was represented at the hearing by an attorney *ad litem,* and none has appealed. The Welfare Unit alleged that the mother "engaged in conduct which endangers the physical and emotional well-being of these children . . ." Trial was before the court, sitting without a jury. The court entered judgment in which it found "that it is in the best interest of the subject children that all parental rights of all Respondents be terminated . . ."

No findings of fact or conclusions of law were filed and none was requested.

Under the first point of error appellant contends the court erred in admitting into evidence a social report prepared by a caseworker for the Welfare Unit. Under section 11.12 of the Texas Family Code a court, in a suit affecting the parent-child relationship, may order preparation of a social study into circumstances and conditions of the child, and of the home. Section

1. The Welfare Unit alleged that Dallas Homer was the father of Pamela Fletcher, a girl born May 29, 1972; that Clarence Hill was the father of Rondy Ann Fletcher, a girl born July 23, 1973; and that the father of Bernard Mark Fletcher, a boy born May 13, 1975, was unknown. Although the State alleged that the father of Bernard is unknown, appellant contends that Clarence Hill is the child's natural father. Ruby Fletcher is the natural mother of the three children.

11.12(c) also requires that the social report be made a part of the record of the suit. The Houston Court of Civil Appeals (1st District), in *Magallon v. State*, 523 S.W.2d 477 (Tex.Civ.App.1975, no writ), interpreted section 11.14 of the Texas Family Code and held that a social study is not evidence upon which the court's findings may be based unless the report is properly admitted into evidence.

The social report in this proceeding was properly admitted into evidence. It was prepared by Mildred Sherry, a caseworker who had been appellant's caseworker for more than eighteen months. Sherry testified that the report was based upon her personal knowledge. Although the report contains some statements which might be considered hearsay, in a nonjury trial the appellate court will usually presume that the trial court did not consider inadmissible evidence and will sustain the judgment if there is other competent evidence to support the judgment. 24 Tex.Jur.2d Evidence, sec. 553 (1961); *Krueger Eng. & Mfg. Co. v. Oil & Gas Bldg. of Houston*, 381 S.W.2d 150 (Tex.Civ.App., Tyler 1964, no writ). We find there is sufficient competent evidence in the record to support the judgment. The first point is overruled.

In considering the mother's contention in her role as appellant that there was no evidence to support the trial court's judgment, we have viewed the record in the light most favorably in support of the trial court's finding that the parent-child relationship should be terminated in the best interest of the child. In examining appellant's third point, that the findings of the trial court were against the great weight and preponderance of the evidence, we have considered all the evidence.

From an examination of the record, under either of these precepts of appellate review, we conclude that the trial court's finding, that the mother knowingly engaged in conduct which endangers the physical and emotional well being of the children, is supported by a preponderance of the evidence of probative value.

The record shows that the conduct of the mother first came to the attention of the Welfare Unit when the Unit was appointed managing conservator of the child, Rondy Ann, and the mother became involved in a custody dispute with the child's father, Clarence Hill. In January of 1974, a caseworker was assigned to appellant's case for the purpose of ascertaining whether the children's welfare was adequately protected. This supervision was considered necessary because the record indicates that appellant has a history of mental instability, resulting in a pattern of erratic and irrational behavior.

Mildred Sherry, who subsequently worked with appellant, testified that when she was assigned to the case, appellant had left Austin with the children without notifying the Welfare Unit which was then acting as managing conservator of Rondy. Appellant later was returned to Austin by the Salvation Army of Dallas, after she became pregnant by a man not identified. That pregnancy terminated May 13, 1975, with birth of Bernard Mark Fletcher. Sherry testified that, following the birth of Bernard, she received a "referral" from a neighbor of appellant reporting that Bernard was in bad condition "with eyes shrunken and arms like sticks," and that the other children were found unattended.

A physician testified at the trial that he had seen Bernard when the boy was one day old and that, at the time, he was a normal, healthy child. The doctor examined Bernard, more than one month later, after Sherry found the child in an apparently malnourished condition. The doctor testified that the subsequent examination revealed Bernard had gained only six ounces since birth, was dehydrated from diarrhea, and was chronically malnourished. After examination of the child, the doctor recommended to appellant that Bernard be hospitalized at once, but felt that, from the mother's reaction, she would not carry out the recommendation. The child was hospitalized and treated after the Welfare Unit obtained an emergency order from the court.

There is evidence in the record also that appellant's lack of supervision and care of her children endangered their welfare in that Rondy was allowed to consume some of appellant's Thorazine tablets, which required emergency treatment at Brackenridge Hospital in Austin.

Sherry testified further that the mother's behavior has not, to her knowledge, improved, nor had appellant's home life stabilized as of the date of the trial.

The trial court had opportunity to observe the parties and to note their demeanor and personalities in the light of human experience. We find the evidence supports the trial court's finding that appellant engaged in conduct which has and will endanger the physical or emotional well being of the children, and that it will be in the best interest of the children to terminate the parent-child relationship.

The judgment of the trial court is affirmed.

Affirmed.