Linda Risinger **ROBINSON**, Appellant,

v.

Frank **RISINGER**, Appellee.

No. 964.

Court of Civil Appeals of Texas, Tyler.

Feb. 17, 1977.

Rehearing Denied March 17, 1977.

Second Motion for Rehearing Denied April 7, 1977.

Rex Kirby, Kirby & Kirby, Tyler, for appellant.

Henry L. McGee, Jr., Tyler, for appellee.

DUNAGAN, Chief Justice.

This is an appeal by Linda Risinger Robinson from an order entered on the 28th day of January, 1976, by the Court of Domestic Relations of Smith County, Texas, granting a motion to change custody filed by her former husband Frank Risinger on July 2, 1974, whereby the custody of Tim Risinger was changed from the mother to the father.

By a decree entered May 14, 1974, in the Court of Domestic Relations of Smith County, Texas, Linda Risinger as Petitioner was granted a divorce from Frank Risinger as respondent and named managing conservator of their only child, Tim Risinger.

On July 2, 1974, less than sixty days after the divorce judgment, respondent-appellee Frank Risinger filed his motion to modify the judgment alleging a material change of circumstances since May 14, 1974.

The trial court upon hearing appellee's motion to modify the divorce decree denied the motion on July 14, 1975.

On July 24, 1975, the appellee filed a motion for a new trial on his motion to modify. The trial court entered an order on the 4th day of September, 1975, granting appellee's motion for a new trial and setting aside his previous order denying said motion. Appellant contends in her brief that neither she nor her counsel were notified of this hearing. Appellee in his brief replies that appellant knew that her attorney of record was given written notice of the January 27, 1976, hearing by letter dated December 16, 1975. Neither of these statements is supported by the record.

On September 5, 1975, appellant Linda Risinger Robinson's counsel at the time filed a motion to set aside the trial court's order granting a new trial to appellee. The record does not reflect that this motion was ever presented to the court or acted upon.

On January 15, 1976, at 3:50 p. m. appellant's attorney at that time, Alvin N. Flynn, filed a motion with the court to withdraw as attorney for the appellant. On the same day, January 15, 1976, the court granted attorney Flynn's motion by a written order filed with the Clerk of the court at 4:05 p. m. Neither the motion to withdraw nor the order granting said motion states or even indicates that the appellant was aware of this action. There is no evidence in the record as to whether the appellant was ever notified that her attorney had withdrawn from the case.

The order permitting Mr. Flynn to withdraw recites that "He is hereby permitted to withdraw as attorney of record for respondent Frank Risinger." Since the record shows and it is undisputed that Mr. Flynn represented the appellant Linda Risinger Robinson, it is obvious that this was a typographical error and therefore he was permitted to withdraw as attorney for the appellant.

On January 22, 1976, appellee paid a jury fee and placed the case on the jury docket.

The record reflects that appellee's motion to modify was called for trial on January 27, 1976, at 10:00 a. m. At that time only appellee and his counsel were present and appellee announced ready for trial. Since neither appellant nor her counsel appeared, appellee (petitioner below) withdrew his request for jury trial and agreed to submission of the matter to the court. Apparently between 10:00 a. m. and noon on January 27, 1976, appellant was informed that the motion to modify had been called for trial and she was supposed to have appeared for the hearing. Appellant contacted the court during the lunchhour and was told that the trial would be delayed until 4:00 p. m. that same day. Appellant traveled to Tyler and was present without counsel in court at 4:00 p. m. After both parties announced ready, the trial judge dictated the following statements into the record:

" . . . Let the record show that in due course a jury demand was made in this case; and that in due course, this matter was set on the jury docket for trial at 10:00 o'clock AM today. And, that in due course, the matter was called. The Attorney for the Petitioner announced ready, and the Respondent was not present, nor was she represented by Counsel. Let the record further show that during the lunch hour, the Respondent contacted the Court by telephone, by long distance from, the Court presumed, Paris; and, the Court advised the Respondent at that time that the Court would hold off hearing the matter until 4:00 o'clock P.M. today. Let the record further indicate that at 4:00 o'clock, or thereabouts, the Respondent was present

in the Courthouse, and that the Respondent is now present in the Courtroom.

.    .    .    .    .

"That prior to the trial of this lawsuit, the Court personally advised the Respondent; that is, immediately prior, that this Court had control of its Judgment for a period of 30 days following the rendition of this Judgment, which the Court understands to be the law. The Court then understood this to be the law. That the Court further advised the Respondent that at this hearing or any other hearing where she was not represented, she was at a distinct and gross disadvantage. That the Court also advised the Respondent to obtain Counsel if she was not satisfied with the outcome of this hearing.

.    .    .    .    .

"Let the record .  .  . also indicate, the Court did advise the Respondent, prior to this hearing, that the failure of a party to appear for trial, when a jury has been requested, is, according to the rules, a waiver of the right to trial by a jury, and the Court may proceed without a jury. Proceed, Counselor."

At the conclusion of this second hearing on appellee's motion to modify the judgment on January 27, 1976, the court entered its order signed on the 28th day of January, 1976, modifying the judgment of May 14, 1974, appointing the appellee as managing conservator of Tim Risinger and appointing Linda Risinger Robinson possessory conservator of said child. It is from this order that appellant appeals. No findings of fact or conclusions of law appears in the record and none was requested.

Appellant, subsequent to the hearing on January 27, 1976, employed new counsel who on her behalf on February 5, 1976, filed a motion for new trial. The record does not show any action on this motion or that it was ever presented to the trial judge.

Appellant by her first point of error contends that the trial court erred in proceeding to trial in the absence of her counsel and in doing so she was denied due process of law.

The record before us does not show when the motion to modify was set for hearing on January 27, 1976. Appellant's lawyer, Alvin N. Flynn, was permitted to withdraw from the case twelve days before the hearing. There is no legal or competent evidence that appellant was or was not notified that her lawyer had withdrawn from the case. Neither the motion to withdraw nor the order granting said motion recites that appellant was notified or was aware of such action.

There were several hearings before the trial court subsequent to the divorce judgment and appellant was represented by legal counsel in each of them, as she was in the divorce proceedings, with the exception of the hearing on appellant's motion to modify held on January 27, 1976. Apparently she was dissatisfied with the outcome of the hearing and followed the court's advice and hired her present attorneys, Kirby & Kirby, who filed her motion for new trial. Appellant not being a lawyer would not be expected to be apprised of her right at that time to demand a lawyer or ask for a continuance until she could obtain one.

These facts and circumstances would certainly create a serious doubt that the appellant was aware that her lawyer had withdrawn from the case or that she had notice that the motion to modify was set for hearing on January 27th until that morning. As a matter of fact, the facts and circumstances would strongly indicate that she did not know her attorney had withdrawn and had no notice of the hearing.

■ Considering all the facts and circumstances above set out, in the absence of any evidence that appellant had notice or was aware, prior to the January hearing, that her lawyer had withdrawn from the case, we cannot say that her failure to be represented at the hearing was due to her fault or negligence. The record does not show that the trial court inquired of appellant if she was aware her lawyer had withdrawn from the case and, if so, if she had em-

ployed new counsel and if not, why. Neither does the record show that the court inquired of her why she did not appear at 10:00 o'clock on the day of the hearing or if she had prior notice of the setting of the motion to modify for hearing at 10:00 a. m., January 27, 1976. The record does show that the trial court advised her prior to the hearing that it had control of its judgment for a period of thirty days following the rendition of this judgment; that where she was not represented at this hearing or any other hearing she was at a distinct and gross disadvantage; and for her to obtain counsel if she was not satisfied with the outcome of this hearing—which she did.

This is not a case where the party litigant was represented by counsel and he thereafter failed to appear at the time of trial, having had prior notice of the setting.

"An attorney should not withdraw without considering carefully and endeavoring to minimize the possible adverse effect on the rights of his client and the possibility of prejudice to his client as a result of his withdrawal. Even when he justifiably withdraws, an attorney should protect the welfare of his client by giving due notice of his withdrawal, suggesting employment of other counsel, delivering to the client all papers and property to which the client is entitled, cooperating with counsel subsequently employed, and otherwise endeavoring to minimize the possibility of harm. . . . " Vol. 7 Part 1 Tex.Jur.2d Attorney at Law sec. 69; State Bar Rules art. XII sec. 8 canon 2 EC 2–32 and State Bar Rules art. XII sec. 8 canon 2 EC 2–32, DR 2–110 subd. (A)(2). Insofar as the record shows this was not done.

Appellant by her point of error number five challenged the sufficiency of the evidence to show a substantial and material change of circumstances since the divorce decree of May 4, 1974.

The statement of facts taken upon the January 27th hearing reflects that the only witnesses to testify were the parties, Frank Risinger and Linda Risinger Robinson. Pursuant to an order of the trial court dated January 2, 1975, Mrs. Kelly Spratlin,

Supervisor of the Tyler-Smith County Child Welfare Unit, filed a report dated April 1, 1975, which is before us by way of a supplemental transcript. There is on file with this court a statement of facts consisting of two volumes of evidence taken in May of 1975. The caption on these two volumes of statement of facts does not show what cause of action on which this testimony was taken. The evidence therein indicates it was a hearing on appellee's motion to modify the divorce decree; however, the record shows that the motion to modify was filed on July 2, 1974, and by written order the court overruled said motion on July 14, 1974. As far as the record shows there were only two hearings on the motion to modify—the first on July 14, 1974, which resulted in an order of denial on the same day. On appellee's motion for new trial this order was set aside and a new trial granted. The next and final hearing on the motion was heard on January 27, 1976, which was granted by order of the court dated January 28, 1976. This is the judgment now before us for review. The record does not show that a stipulation was made by the parties for these two volumes of statement of facts to be used in the January 27, 1976 hearing, nor that said statement of facts was offered in evidence.

In substance, the appellee, Frank Risinger, testified that his former wife's present husband, John Robinson, had made threatening and obscene telephone calls to him to the effect that if he "didn't back off the case," he, Risinger, was going to get hurt; that Mr. Robinson and the appellant were dating after the divorce and that their relationship put Mr. Robinson in contact with his son from time to time; that the investigation of the care or treatment which his son received at the time when Mr. Robinson was with his mother before their marriage to each other was by a private investigator which he had employed. He testified that on a few occasions he made an investigation on his own and found that Mr. Robinson was at the appellant's apartment quite late on a few occasions; that while Mr. Robinson and the appellant were to-

gether his son Tim was mostly neglected. The basis of this statement was that Tim was locked out of the house and left out by a swimming pool at the apartment complex by himself for approximately three hours; on cross-examination by appellant he was asked why he thought that Tim had been unattended by her and he replied, "The private investigator's report for one thing, which showed that you had left him unattended by the swimming pool, and you and Mr. Robinson had gone back into his apartment and stayed for, I think it was around three hours. I believe you're familiar with the investigator's report." This is pure hearsay testimony. He also gave other testimony consisting of what his investigator told him. Even though this testimony was unobjected to, such is incompetent testimony and could not be considered on appeal in determining the sufficiency of the evidence. *State v. Wilson*, 439 S.W.2d 134, 139 (Tex. Civ.App.—Tyler 1969, n. w. h.). On cross-examination the appellee inquired of Mr. Risinger if he didn't pay a Mr. Rook who lived two doors from John Robinson "$300.00 to get on the stand and gut me?" He answered that was not true, but that Mr. Robinson told him "that you went to him and promised him sex if he would come up here and say that I paid him. So, it sounds to me like he was working both ends toward the middle." Mrs. Robinson, appellant, then inquired of Mr. Risinger as to why he couldn't get Mr. Rook up here to testify. Mr. Risinger answered that he and his attorney did some checking on Mr. Rook and found that he had lost two or three jobs due to his drinking problem and that he didn't put any validity in what he said that you had promised him, and he didn't want him to testify for him because of his background and character. At this point appellant inquired of the court if she could subpoena Mr. Rook. Even though the court had previously advised the appellant that if she was not satisfied with the result of the hearing she could then employ a lawyer and later requested appellee's lawyer to give notice of intent to appeal for the appellant, the court refused to advise the appellant as to whether she could subpoena Mr. Rook

explaining he could not legally represent her. We agree with the trial court that the appellant was at a distinct and gross disadvantage being put to trial without benefit of counsel. Mr. Risinger also testified that his son Tim told him that Mr. Robinson had kicked him. However, on cross-examination he testified that he did not believe everything that Tim tells him and that he had not seen any bruises on Tim where Mr. Robinson had kicked him. Mr. Risinger further testified that the weekend before the hearing on January 27th he picked up Tim in accordance with his visitation privileges and that he had "dirt and filth in and around his ears;" his hair was very dirty; two or three of his fingernails were broken off and needed clipping and cleaning. He said this was about 9:45 Saturday morning. Mr. Risinger testified that in the event he gained custody of the child he had made arrangements with a woman to come into his home and keep the child "between 7:30 and 7:45 and stay until I return." From the record it is obvious that he was referring to 7:30 a. m. and 7:45 p. m. The appellee, Linda Risinger Robinson, testified that Tim had never been kicked and "He lives in a very clean, and very good atmosphere. I have never said anything against his father; I have always been real nice about it. I am just not a bad mother. I have not neglected Tim ever. My husband has been wonderful to him. We play with him all the time. Both of us read to him; we tell him stories. My husband has even taught him to make up his own stories to tell about at bedtime, about different little characters or animals and stuff like that, where his imagination will be broader. He plays golf with us. Anytime he has been sick, I've carried him to the doctor. His hair—he said his hair has been dirty when he has picked him up—it is always, every time, I swear to you, been washed. That Friday—I wash it twice a week. Tim is very particular about his hands and his fingernails, and they're always clean."

In *Holloway v. Allison*, 494 S.W.2d 612 (Tex.Civ.App.1973, n. w. h.), this Court said:

"A person seeking to change the custody of children has the burden to prove

that conditions have so changed to leave the custody of the child or children as previously adjudicated would be injurious to the welfare of the child and requires that such custody be changed. . . .

"Although a change of conditions since the original award of custody is necessary in order to secure a change of custody, the fact that there has been a change does not necessarily compel the court to make a change of custody. We recognize the well-settled rule of law that in modifying a custody judgment the trial court should be governed by what will be to the best interest and welfare of the minor children, but it is equally as well settled that such modification must be based upon changed conditions. . . . Therefore, the trial court would reach the question of whether or not the best interest of the minor children would be served by a change of custody, only upon appellant establishing by legal and competent evidence that there were materially changed conditions as to warrant, authorize or require any change of custody.
. . .

"Not every change of conditions occurring since a judgment of divorce adjudicating the custody of children is sufficient grounds to require or authorize a change of custody of the children . . . The change of conditions must be a material one to *authorize* a change of custody . . . The law 'will not permit a change of custody, once judicially determined, except upon a showing of materially changed conditions . . ..'" (Emphasis added.) See also *Becerra v. Garibaldo,* 526 S.W.2d 780, 784 (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n. r. e.).

■ In determining the question of custody of minor children the trial judge is vested with a large measure of discretion in determining the controlling question of what is the best interest of said children, and his judgment thereon should be reversed only when it appears from the record as a whole that such discretion has been abused. *Herrera v. Herrera,* 409 S.W.2d 395 (Tex.1966); *Adams v. Adams,*

519 S.W.2d 502 (Tex.Civ.App.—El Paso 1975, n. w. h.); *Mumma v. Aguirre,* 364 S.W.2d 220 (Tex.1963).

■ The legal and competent evidence adduced upon this hearing and the record as a whole does not show that the circumstances of the child have materially and substantially changed since the entry of the divorce decree as to be injurious to the child's welfare or that the modification is in the best interest of the child. Therefore, we think the court abused its discretion in granting appellee's motion to modify the divorce decree of May 14, 1974 and the judgment of the trial court is reversed. This case having been reversed, considering all the facts and circumstances and the state of the record before us, we have concluded that this is a case that should be remanded "in the interest of justice" for a new trial. *Wilson v. Wilson,* 494 S.W.2d 609, 612 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ dism'd) and Part 2 Vol. 4 Tex.Jur. sec. 915 p. 599.

In view of our disposition of this case, it becomes unnecessary to discuss appellant's remaining points of error.

The judgment is reversed and remanded.

## ON MOTION FOR REHEARING

Appellee in his motion for rehearing complains that we considered appellant's statements in her brief "that neither she nor her counsel were notified of this hearing" even though appellee challenged such claims in his brief. We are aware of the rule to which appellee refers. To clarify our original opinion in this respect we now state that we did not give any consideration whatsoever to the statements complained of in arriving at our original decision. As a matter of fact, both appellant's and appellee's briefs contained statements of alleged facts which do not have support in the record. We did not consider any of such statements, nor did we consider appellant's affidavit sworn to on June 14, 1976, and filed with the clerk of the trial court on June 15, 1976.

■ The only matters which Courts of Civil Appeals are authorized to consider on affidavits are those which involve the exercise of its jurisdiction. *Rosetta v. Rosetta,* 525 S.W.2d 255 (Tex.Civ.App.—Tyler 1975, n. w. h.); Article 1822, V.T.C.S.

■ In our original opinion we pointed out that in the record before us were two volumes of statement of facts of evidence taken in another hearing in May of 1975 between the same parties and that such statement of facts were not offered in evidence on the hearing held January 27, 1976. Therefore, we cannot consider contents of these two volumes of statement of facts. Neither the trial court nor this court may take judicial knowledge of the contents therein. *Ray v. Shafer,* 519 S.W.2d 525 (Tex.Civ.App.—Fort Worth 1975, n. w. h.); *Continental Oil Co. v. P. P. G. Industries,* 504 S.W.2d 616, 622 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.); *Ex parte Turner,* 478 S.W.2d 256, 258 (Tex.Civ. App.—Houston [1st Dist.] 1972, n. w. h.); see *White v. Natural Gas Pipeline Company of America,* 444 S.W.2d 298, 302 (Tex.1969).

The social study, dated April 1, 1975, made by the Child Welfare Department was introduced into evidence by plaintiff-appellee on the hearing held January 27, 1976. The social study is before us only by way of supplemental transcript filed in this court on July 28, 1976, approximately six months after the hearing and sixty-one days after time for the filing of the statement of facts and transcript had expired. The report itself was filed with the clerk of the trial court on July 20, 1976, three months after this court obtained jurisdiction over this matter. 4 Tex.Jur.2d Part 1 sec. 321 p. 173.

■ "Instruments which are part of proceedings in trial court only because they have been offered in evidence may not properly be included in transcript on appeal." Rules 376, 376–a, T.R.C.P.; *Rotello v. The State of Texas,* 492 S.W.2d 347 (Tex. Civ.App.—Houston [1st Dist.] 1973, writ of error ref'd 497 S.W.2d 290). A social study is not evidence upon which the trial court's findings may be based unless the report is properly admitted into evidence. *Fletcher v. Travis County Child Welfare Department,* 539 S.W.2d 184 (Tex.Civ.App.—Austin 1976, n. w. h.) and *Magallon v. State of Texas,* 523 S.W.2d 477 (Tex.Civ.App.— Houston [1st Dist.] 1975, n. w. h.). Therefore, the social study could only be considered by the trial court by reason of it being offered into evidence. Being before us only by improper inclusion in the transcript, the social study cannot be considered by this court. The only evidence taken in the January 1976 hearing found in the statement of facts is the testimony of the parties. Appellee's testimony to a great extent consists of hearsay.

We have again examined all the evidence before us and all of the surrounding facts and circumstances and in view of the condition of this record we remain convinced that the decision we reached in our original opinion is correct.

Appellee's motion for rehearing is respectfully overruled.