**Daniel P. REMLING et al., Appellants,**

v.

**Oliver Douglas GREEN et ux., Appellees.**

**No. 17672.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 1, 1980.

Rehearing Denied May 29, 1980.

Denson & Swain, Howard J. Stern, Houston, for appellants.

Caldwell & Hurst, Steve Underwood, Houston, for appellees.

Before PEDEN, EVANS and WARREN, JJ.

PEDEN, Justice.

Daniel and Mary Remling and Mary Lightfoot appeal from a decree of adoption rendered in favor of Oliver and Rada Green. They contend that the trial court erred in granting the Greens' petition for adoption because 1) it improperly considered a written social study report which was never introduced into evidence at the hearing, 2) the investigator who prepared the social study report did not testify at the hearing, 3) the hearing on the adoption was held more than sixty days after appointment of the investigator, and 4) the finding that the adoption was in the best interest of the children involved was not supported by the evidence. Appellants further complain that the trial court abused its discretion by failing to include in the adoption decree an order that they retain their status as possessory conservators of the children.

We agree with the appellants' first contention, and we reverse and remand.

The children adopted in this cause were Stacey, Richard, and Elizabeth Remling, whose parents were accidentally killed in July of 1977. Since that time the children, who are all under the age of ten, have lived with the Greens, their maternal aunt and uncle. In October of 1977, the Brazoria County domestic relations court signed an agreed order naming Mrs. Green as managing conservator of the children and naming as possessory conservators the appellants, who are the children's paternal grandparents and aunt. The visitation provisions of the decree have been faithfully observed by all parties.

In January of 1979, the Greens filed a petition to adopt the children. After a contest had been filed, the court entered an amended order on May 11 directing the Brazoria County Protection Services to conduct a social study investigating the background of the children and the Greens in order to determine whether the adoption would be in the best interest of the children. The report was to be filed with the court by July 2.

On September 5, the court held a hearing on the adoption. Although the social study was filed with the court on that date, it was never offered or admitted into evidence, and the social worker who conducted the study was not called to testify. The Greens' petition for adoption was granted by an order signed on October 25. The decree did not award the appellants any visitation or access rights.

In its findings of fact the trial court stated that the required social study had been made and filed and was considered by the court. It also noted that no objection was made to consideration of the study and that the appellants did not request right of access to or visitation with the children in their original answer. In its conclusions of law the court stated that it had no authority to order access to the children by the appellants, noting that there is no provision in the Texas Family Code for access by a natural aunt after adoption and concluding that § 14.03(d) of the Family Code denies access to these natural grandparents because the Greens are not the children's natural parents. Finally, the court concluded that the duties and privileges of the appellants as former possessory conservators were terminated upon entry of the final adoption decree.

Appellants' first two points of error assert that the trial court erred in considering the social study report when it was not introduced into evidence and its author did not testify at the hearing.

A copy of the social study report is included in the transcript. Appellants correctly point out that the report is not evidence upon which the trial court's findings may be based, since it was not properly admitted into evidence at the hearing. D_____ F_____ v. State, 525 S.W.2d 933 (Tex.Civ.App.1975, writ ref. n. r. e.); Kates v. Smith, 556 S.W.2d 630 (Tex.Civ.App.1977, no writ); Magallon v. State, 523 S.W.2d 477 (Tex.Civ.App.1975, no writ).

Section 16.031(a) of the Family Code makes mandatory in adoption proceedings the filing of a social study report as provided in Section 11.12. Section 11.14 provides that in suits affecting the parent-child relationship the rules of evidence apply as in other civil cases. Apparently the legislature contemplated that the report would be offered into evidence and that the person making it would be subject to direct and cross-examination.

Mr. and Mrs. Green testified that they love the children and have been taking care of them since 1977. Mr. Green testified that they are financially able to continue to do so. Mrs. Green said she keeps the children neat and clean and washes their clothes daily. This was corroborated by Mr. Green and by Mrs. J. D. Hooks, who has visited with the children and sometimes kept them overnight in her home. Mrs. Green stated that on two occasions when one of the children had been hurt while playing she promptly took the child to a doctor and followed the instructions of the doctor in regard to follow-up treatment. The Greens say they take the children to

church regularly. They have two children of their own, and all five children were said to get along well and play together under the Greens' supervision. Both Mr. and Mrs. Green admitted that they use a belt to discipline the children as often as twice a week. They deny that the children had ever been bruised as a result of such disciplining. Mrs. Hooks said that she had observed no signs of excessive discipline and no sign that the children are afraid of the Greens. Mrs. Green testified that she felt it would be beneficial to the children to be adopted and have their names legally changed to Green because then they would know "who they are."

Appellants, on the other hand, testified that on many occasions when they have picked the children up for visitations the children have been quite dirty and their clothes soiled. Appellants have also found bruises on the two boys on several occasions, bruises which they believe were caused by blows from a belt. They admitted, however, that they cannot be certain where the bruises came from. Appellants indicated that the children have expressed fear of being punished by the Greens for getting dirty or tearing their clothes. They point out that Mr. Green admitted having paddled the children for falling asleep during church services.

Appellants questioned whether the Greens were able to provide adequate supervision and care for the children since Mr. Green's job frequently takes him away from home for periods ranging from three days to three weeks. They also suggested that the medical treatment provided by the Greens for the oldest boy when he injured his toe was inadequate and may have led to permanent disfigurement of the toe. They consider it significant that Mrs. Green has begun taking her own children to a different doctor than the one she uses for the Remling children. When asked why they opposed the adoption, the Remlings voiced their opposition to having the children's names changed.

The children were not present at the hearing. In fact, Mr. and Mrs. Green both stated that the children did not even know about the adoption proceeding and that they were not sure when they would tell them about it.

The report consists of four short paragraphs identifying the social worker, summarizing her conclusions about the suitability of the Greens and of appellant Lightfoot as adoptive parents, and recommending the adoption. The relevant provisions are:

They [the Greens] have adequate housing and appear to be financially and emotionally stable at this time. They were described by references as loving, protective parents for the Remling children. Allegations of medical neglect were invalidated. Photographs revealing bruises on Stacey's buttocks could not be validated as abuse, but possibly as a one time incident of over disciplining. The children want to be adopted by the Greens.

\*   \*   \*   \*   \*   \*

It is respectfully recommended that Mr. and Mrs. Oliver Green be given leave to adopt the minor children, Elizabeth, Stacey and Richard Remling and that henceforth the children be known as Elizabeth Remling Green, Stacey Remling Green and Richard Remling Green. Both Mrs. Mary Lightfoot and Mr. and Mrs. Daniel Remling, paternal grandparents, should be permitted reasonable visitation.

The fact that the trial court ordered the report in advance of the hearing date and that appellants may have known that the report had been filed does not support the trial court's action in considering the report as evidence. The appellants were under no obligation to make any objection to the report until such time as it was offered into evidence, and there is nothing in the record indicating that appellants had any reason to believe that the trial court intended to consider it. In view of the trial court's express finding that the social study report was considered, we cannot presume that the report was merely on file in the record of the case and that it had no bearing on the court's decision. *Kates v. Smith*, supra.

A principal ground for the appellants' contest of the adoption was the excessive disciplining of the children by the appellees. The appellants contended, in effect, that the children had been whipped with a belt to the degree that bruises were manifest on their backs. The appellees testified that the children had been whipped with a belt on a regular basis, but they denied that this caused any bruises. A neighbor and friend of the appellants, one of only two witnesses not related to any of the parties, testified that on one occasion she had observed bruises about ⅜ of an inch wide and 2 inches long on the lower back and seat of one of the children.

In the social study report, the social worker flatly concluded that photographs revealing bruises on the child's buttocks could not be "validated" as abuse and possibly indicated "a one-time incident of over discipline." The social worker further reported that the children "want to be adopted" by the appellees. Other than this ex parte statement, there was no "evidence" offered with respect to the children's wishes.

■ Since the social study report was never offered in evidence, the appellants were denied the valuable right of cross-examining its author, and they were never afforded the opportunity to contradict or overcome by other evidence the statements contained in the report. The social study report contained information calculated to influence the trial court's decision. We believe that the denial of the appellants' rights in this respect constituted reversible error. Rule 434, Tex.R.Civ.P.

In their fourth point of error appellants complain that the trial court abused its discretion in failing to include in the adoption decree an order that appellants retain their status as possessory conservators of the children. We will discuss this point since it may arise again. Appellants concede that their status as possessory conservators under the prior order was terminated by the adoption decree. They contend, however, that the trial court was mistaken in its conclusion that it had no authority to grant appellants access to the children because of Section 14.03(d) of the Family Code.

Section 14.03(d), as amended in 1977, reads as follows:

(d) If the court finds that it is in the best interests of the child as provided in Section 14.07 of this code, the court may grant reasonable access rights to either the maternal or paternal grandparents of the child; and to either the natural maternal or paternal grandparents of a child whose parent-child relationship has been terminated or who has been adopted before or after the effective date of this code. *Such relief shall not be granted unless one of the child's legal parents at the time the relief is requested is the child's natural parent.* The court may issue any necessary orders to enforce such decree. (emphasis added)

■ As we have noted, both of the natural parents of the children are dead. Therefore, under the clear language of the statute the relief requested cannot be granted. Appellants make the persuasive argument that the italicized sentence of § 14.03(d) was not intended to cover such a case as this one. They contend that the purpose of that restriction is to protect the child, his natural parents, and his adoptive parents from the disruption which disclosure of the identity of the natural parents may cause in cases where the child has been given up for adoption by strangers and may even be unaware that he is adopted.

However, even assuming that appellants are correct in their postulates of legislative intent, the clear language of the statute cannot be ignored. In the face of such clarity, relief must be sought from the legislature, not from the courts.

■ In regard to Mrs. Lightfoot, the trial court noted that the Family Code contains no provision for access to adopted children by a natural paternal aunt. Appellants contend that even though such visitation is not expressly authorized, the trial court nevertheless has discretion to grant it. They cite no authority for this proposition,

and we have found none. In any event, the judgment of the trial court in determining the best interests of the children and awarding custody accordingly can only be overturned when it appears from the record as a whole that the court has abused its discretion. *Herrera v. Herrera*, 409 S.W.2d 395 (Tex.1966); *Mumma v. Aguirre*, 364 S.W.2d 220 (Tex.1963). Even assuming that the trial judge had discretionary authority to grant access to Mrs. Lightfoot, he also had discretionary authority to deny it. Appellants have not shown that the trial court's action in this instance amounted to an abuse of discretion.

Our ruling on the appellants' first two points of error makes it unnecessary for us to rule on their other points.

The judgment of the trial court is reversed and this cause is remanded for a new trial.