SKIPPER-final 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-117-CV





HODSOLL SKIPPER AND NANCY SKIPPER,



 APPELLANTS


vs.





TEXAS DEPARTMENT OF HUMAN SERVICES,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT



NO. 494,316, HONORABLE PETE LOWRY, JUDGE PRESIDING



 





 Hodsoll Skipper appeals from a final judgment terminating his parental rights with
respect to his two children, Charlie and Rhiana. The trial court also terminated the parental rights
of the children's mother, Nancy Skipper, and named the Texas Department of Human Services
permanent managing conservator for the two children. We will affirm the trial court's judgment.

 Nancy Skipper perfected an appeal in this cause; however, she subsequently filed,
in the district court, a motion to dismiss the appeal and to withdraw her affidavit of inability to
pay costs. See Tex. R. App. P. 59(a)(1)(B) (voluntary dismissal of appeal). Ms. Skipper has
neither filed a brief in this cause nor raised any points of error. Accordingly, on our own motion,
we dismiss Nancy Skipper's appeal.

BACKGROUND


 In February 1987, the Texas Department of Human Services (1) (the "Department")
received a referral regarding an incident of family violence in the Skipper home. The incident
involved alleged physical violence and threats of violence by Mr. Skipper toward his wife and his
daughter. Allegedly, Mr. Skipper had struck his daughter in the face, had beaten Ms. Skipper,
had threatened to kill himself and the children in a car accident, and had made other threats
toward his daughter. The Department investigator observed a volatile argument between the
parents and bizarre behavior by Mr. Skipper, including another threat of suicide. The parents
admitted prior use of heroin, cocaine, and other drugs. The investigator was also told that the
children had been previously removed temporarily when the family lived in South Carolina. The
Department placed the children in protective custody.

 The Department then initiated this cause in Williamson County. A show-cause
hearing was conducted, and the Department was named temporary managing conservator for the
children. An attorney ad litem was appointed to represent the interests of the children. Upon the
Skippers' agreement to work with the Department and to follow its service plan and
recommendations, the Department returned the children to the home.

 Approximately one month later, in March 1987, the mother requested that the
children be placed in foster care to protect them from their father's violence. The mother's
request came after she had fled to a center for battered women because of another violent incident
initiated by Mr. Skipper. The Department placed the children in a foster home. After further
counseling work with the Skippers, the Department returned the children to the home in June
1988.

 In June 1989, the Department received another referral after Ms. Skipper had been
admitted to Brackenridge Hospital because of injuries allegedly inflicted by Mr. Skipper and an
overdose of drugs. There were also allegations that a boyfriend of Mr. Skipper's sister had
sexually abused Rhiana. The children were again removed from the home and have since
remained in foster care. The parents were allowed supervised visitation and ordered to pay
twenty-five dollars per month in child support.

 In November 1990, Ms. Skipper filed for divorce in Travis County. In January
1991, on the Department's motion, this cause was transferred to Travis County and consolidated
with the divorce cause. In September 1991, after a non-jury trial, the trial court terminated the
parental rights of both parents and named the Department permanent managing conservator of the
children. The trial court also granted a decree of divorce to the parents. Mr. Skipper appeals the
order of termination and urges five points of error.



DISCUSSION


Findings of Fact and Conclusions of Law


 In his first point of error, Mr. Skipper contends the trial court erred in failing to
file findings of fact and conclusions of law. At the time Mr. Skipper filed his brief, the trial court
had not filed findings of fact and conclusions of law. Subsequently, however, the trial court cured
this omission.

 Mr. Skipper requested findings of fact and conclusions of law on January 27, 1992,
and filed a notice of past due findings of fact and conclusions of law on February 20, 1992. See
Tex. R. Civ. P. 296, 297. On February 27, 1992, Mr. Skipper perfected this appeal. At some
point, the Department sent proposed findings of fact and conclusions of law to the trial court. 
However, the trial court did not act on these until November 19, 1992. These findings and
conclusions have been forwarded to this Court by supplemental transcript. See Tex. R. App. P.
55(b). Mr. Skipper did not object to the Department's proposed findings of fact and conclusions
of law or submit alternative findings and conclusions to the trial court. Mr. Skipper has neither
moved to strike these findings and conclusions from the record nor amended his brief to address
any inaccuracies in the findings and conclusions.

 The failure to file findings of fact and conclusions of law, if properly requested,
is reversible error, unless the record shows no harm resulted. Cherne Indus., Inc. v. Magallanes,
763 S.W.2d 768, 772 (Tex. 1989). However, an appellate court may consider late findings of fact
and conclusions of law absent a motion to strike and a showing of harm. Narisi v. Legend
Diversified Invs., 715 S.W.2d 49, 50 n.2 (Tex. App.--Dallas 1986, writ ref'd n.r.e.); see also
Summit Bank v. The Creative Cook, 730 S.W.2d 343, 345 (Tex. App.--San Antonio 1986, no
writ).

 In this case, findings of fact and conclusions of law were filed after Mr. Skipper
filed his brief. Mr. Skipper has taken no action to strike these findings and conclusions or to
challenge, in an amended brief, the late filing or the substance of the findings and conclusions. 
Accordingly, we conclude that these findings and conclusions are properly before this Court for
consideration and that the record shows no harm to Mr. Skipper because of their late filing. See
Ford v. Darwin, 767 S.W.2d 851, 856 (Tex. App.--Dallas 1989, writ denied); Morrison v.
Morrison, 713 S.W.2d 377, 381 (Tex. App.--Dallas 1986, writ dism'd); Labar v. Cox, 635
S.W.2d 801, 803 (Tex. App.--Corpus Christi 1982, writ ref'd n.r.e.); Gomez v. Gomez, 577
S.W.2d 327, 330 (Tex. Civ. App.--Corpus Christi 1979, writ ref'd n.r.e.); see also Anderson v.
Smith, 635 S.W.2d 204, 206-07 (Tex. App.--Houston [1st Dist.] 1982, no writ) (point of error
complaining of trial court's failure to file findings and conclusions moot after late filing of
findings and conclusions). We overrule Mr. Skipper's first point of error.



Sufficiency of the Evidence


 In his fourth and fifth points of error, Mr. Skipper contends that the evidence was
legally and factually insufficient to support termination of his parental rights under section 15.02
of the Texas Family Code or to support a determination that termination was in the best interest
of the children.

 A court may terminate a parent-child relationship if it finds that the parent engaged
in any of the specified conduct set out in section 15.02(1) and that termination is in the best
interest of the child. Tex. Fam. Code Ann. § 15.02 (West Supp. 1993); Texas Dep't of Human
Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987); Holley v. Adams, 544 S.W.2d 367, 370 (Tex.
1976); Smith v. Sims, 801 S.W.2d 247, 251-52 (Tex. App.--Houston [14th Dist.] 1990, no writ).

 The trial court found that:



72. HODSOLL M. (BUDDY) SKIPPER knowingly placed or allowed the child,
CHARLIE SKIPPER to remain in conditions or surroundings which
endangered the physical or emotional well-being of the child, CHARLIE
SKIPPER.


73. HODSOLL M. (BUDDY) SKIPPER engaged in conduct or knowingly
placed the child, CHARLIE SKIPPER with persons who engaged in conduct
which endangered the physical or emotional well-being of the child,
CHARLIE SKIPPER.


74. HODSOLL M. (BUDDY) SKIPPER failed to support the child, CHARLIE
SKIPPER in accordance with his ability during a period of one year ending
within six months of filing of the petition.


75. Termination of the parent-child relationship between HODSOLL M.
(BUDDY) SKIPPER and CHARLIE SKIPPER is in the best interest of the
child, CHARLIE SKIPPER.


76. HODSOLL M. (BUDDY) SKIPPER knowingly placed or allowed the child,
RHIANA SKIPPER to remain in conditions or surroundings which
endangered the physical or emotional well-being of the child, RHIANA
SKIPPER.


77. HODSOLL M. (BUDDY) SKIPPER engaged in conduct or knowingly
placed the child, RHIANA SKIPPER with persons who engaged in conduct
which endangered the physical or emotional well-being of the child,
RHIANA SKIPPER.


78. HODSOLL M. (BUDDY) SKIPPER failed to support the child, RHIANA
SKIPPER in accordance with his ability during a period of one year ending
within six months of filing of the petition.


79. Termination of the parent-child relationship between HODSOLL M.
(BUDDY) SKIPPER and RHIANA SKIPPER is in the best interest of the
child, RHIANA SKIPPER.



See Tex. Fam. Code Ann. § 15.02(1)(D), (E), (F), (2) (West Supp. 1993).

 If a party believes findings of fact filed in support of a judgment to be incorrect or
incomplete, the party should request specified, additional, or amended findings. Tex. R. Civ. P.
298; James Holmes Enters., Inc. v. John Bankston Constr. Equip. Rental, Inc., 664 S.W.2d 832,
834 (Tex. App.--Beaumont 1983, writ dism'd); Lettieri v. Lettieri, 654 S.W.2d 554, 556
(Tex.App.--Fort Worth 1983, no writ). If the findings of fact are not excepted to and assigned as
erroneous, the findings will constitute undisputed facts binding on all parties and will be sustained
if there is any evidence in the record to support them. James Holmes Enters., 664 S.W.2d at 834;
Payne v. City of Tyler, 379 S.W.2d 373, 376 (Tex. Civ. App.--Tyler), writ ref'd n.r.e., 383
S.W.2d 804 (Tex. 1964).

 The trial court's findings of fact reflect a history of violent behavior and threats by
Mr. Skipper toward Ms. Skipper and the children, threats of suicide by Mr. Skipper, and threats
against third parties. The trial court found that Mr. Skipper had a history of severe drug abuse,
that he had failed to complete programs designed to cure his drug problems, and that he would
continue to use methadone for the rest of his life. The trial court found indications that Mr.
Skipper continued to use illegal drugs after the Department intervention and that he evaded drug
tests. The trial court found Mr. Skipper made statements to the children that endangered them
emotionally, including disparaging comments about their mother and instructions not to tell
Department caseworkers about problems in the home. The court found that Mr. Skipper had a
history of unstable residency, including a period of living in his car, and that he had not made
progress in improving stability in his lifestyle. Based on these underlying facts, the trial court
found that Mr. Skipper had "knowingly placed or knowingly allowed [the children] to remain in
conditions or surroundings which endangered the physical or emotional well-being" of the
children, and had "knowingly engaged in conduct or knowingly placed [the children] with persons
who engaged in conduct which endangered the physical or emotional well-being" of the children. 
The court also found that terminating Mr. Skipper's parental rights would be in the best interest
of the children. We conclude that these unchallenged findings are sufficient to support the trial
court's conclusion that Mr. Skipper's parental rights should be terminated pursuant to section
15.02.

 However, in light of the late-filed findings of fact, it may be appropriate that we
consider Mr. Skipper's fourth and fifth points of error as challenges to the sufficiency of the
evidence to support the individual findings of fact.

 Section 11.15(b) of the Texas Family Code requires that in a suit to terminate the
parent-child relationship, each required finding must be based on clear and convincing evidence. 
Tex. Fam. Code Ann. § 11.15(b) (West 1986); In re G.M., 596 S.W.2d 846, 847 (Tex. 1980);
Neal v. Texas Dep't of Human Servs., 814 S.W.2d 216, 222 (Tex. App.--San Antonio 1991, writ
denied). This standard requires a "measure or degree of proof which will produce in the mind
of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be
established." In re G.M., 596 S.W.2d at 847. The clear and convincing standard of proof to
terminate parental rights, however, does not alter the appropriate standard of appellate review. 
We recently rejected an intermediate standard of appellate review in a termination-of-parental-rights case. See D.O. v. Texas Dep't of Human Servs., 851 S.W.2d 351, 354 (Tex. App.--Austin
1993, no writ).

 We attach to findings of fact the same weight that we attach to a jury's verdict upon
jury questions. City of Clute v. City of Lake Jackson, 559 S.W.2d 391, 395 (Tex. Civ.
App.--Houston [14th Dist.] 1977, writ ref'd n.r.e.). Findings of fact are reviewable for legal and
factual sufficiency of the evidence by the same standards used to review jury findings. Okon v.
Levy, 612 S.W.2d 938, 941 (Tex. Civ. App.--Dallas 1981, writ ref'd n.r.e.) (citing Hall v.
Villareal Dev. Corp., 522 S.W.2d 195 (Tex. 1975)). In reviewing the sufficiency of the evidence,
we shall not substitute our judgment for that of the fact finder. In re W.E.R., 669 S.W.2d 716,
717 (Tex. 1984). When both no-evidence and factual insufficiency complaints are raised, we must
first examine the legal sufficiency of the evidence. Glover v. Texas Gen. Indem. Co., 619 S.W.2d
400, 401 (Tex. 1981).

 In deciding a no-evidence point, we must consider only the evidence and inferences
tending to support the findings of the trier of fact and disregard all evidence and inferences to the
contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986), cert. denied, 111 S.
Ct. 135 (1990); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); see generally William
Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex.
L. Rev. 515 (1991).

 When reviewing the factual sufficiency of the evidence to support the findings of
the trier of fact, we must consider and weigh all the evidence and should set aside the judgment
only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660,
661 (Tex. 1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986). See generally
Powers & Ratliff, supra.

 As stated above, section 15.02(1) lists specific types of parental conduct which are
sufficient grounds to terminate the parent-child relationship. The supreme court has set out a non-exhaustive list of factors which may be considered in determining when termination is in a child's
best interest:



(A) the desires of the child; (B) the emotional and physical needs of the child now
and in the future; (C) the emotional and physical danger to the child now and in the
future; (D) the parental abilities of the individuals seeking custody; (E) the
programs available to assist these individuals to promote the best interest of the
child; (F) the plans for the child by these individuals or by the agency seeking
custody; (G) the stability of the home or proposed placement; (H) the acts or
omissions of the parent which may indicate that the existing parent-child
relationship is not a proper one; and (I) any excuse for the acts or omissions of the
parent.



Holley, 544 S.W.2d at 372 (footnotes omitted).

 The evidence reflects that the family's problems and Mr. Skipper's violence and
threats were at least partly the result of extensive abuse of drugs, including heroin, cocaine, and
prescription painkillers. Ms. Skipper also abused some of these drugs. Although Mr. Skipper
disavowed any current drug use other than methadone, supplied as part of his drug treatment
program; other drugs prescribed to treat his back injury; and occasional marijuana use, other
witnesses disputed this testimony. The evidence shows the Skippers failed and refused drug tests
and failed to complete or were expelled from many of the drug treatment and counseling sessions
recommended by Department caseworkers.

 The evidence shows inconsistent attendance by the Skippers at their visitation with
the children and continued family conflict. Although ordered to do so, the Skippers have
completely failed to make any child support payments during the pendency of this cause.

 The evidence shows that the parents continue to live a very unstable life and that
neither has maintained a residence sufficient for the children. At the time of trial, Mr. Skipper
lived in a one-bedroom apartment. Mr. Skipper admitted that he would need a larger home to
care for the children, but that he had made no effort to secure larger accommodations. He
proposed continuing foster care of the children for several months until he could make these
arrangements. Ms. Skipper was incarcerated for a probation violation at the time of trial.

 Mr. Skipper was in a methadone program at the time of trial. He stated that he
took methadone for his back injury because other pain medication had caused him adverse side
effects. There was expert testimony that methadone is generally used in drug-abuse treatment
programs as a substitute for abused drugs and not as a pain medication, that methadone is itself
addictive, and is usually gradually phased down in dosage. The evidence showed Mr. Skipper
maintained a high methadone dosage with no reduction during his time in the program. 
Moreover, evidence shows that Mr. Skipper continued to abuse illegal drugs after the
Department's intervention.

 Mr. Skipper made comments to the children that undermined their development and
progress in dealing with their situation, including threats against caseworkers, threats of suicide,
and derogatory comments about Ms. Skipper and the foster parents.

 Several mental health professionals testified as experts at trial. These included, in
addition to the Department caseworkers, the supervisor of Mr. Skipper's methadone program, a
therapist who provided marital, parenting, and group chemical dependency counseling to the
Skippers, and two psychologists who examined the family members. All the experts agreed that
the children should ultimately be placed together if possible.

 Janie Hailey was the initial Department investigator. She testified about the initial
referral, her observations, and statements made by the parents and the children in the course of
her investigation. She related the bases for the decisions of the Department. She also stated her
opinion that the Skippers had engaged in conduct that endangered the children and that the
children were adoptable.

 Audrey Deckinga was also involved in the Department's conservatorship of the
children. She testified as to the Skippers' inconsistent visitation and its effect on the children, the
children's adjustment to foster care, the parents' failure to complete recommended treatment
programs, and Mr. Skipper's inappropriate behavior at visitation. She stated her opinion that
Rhiana had been sexually abused while in the Skippers' care, and that the Skippers knew of this
and failed to prevent the abuse. She stated her opinion that the Skippers had engaged in conduct
that endangered the children and that termination was in the children's best interest.

 Janice Brown was a Department caseworker in this matter. She testified that it was
her opinion that the Skippers had knowingly placed or allowed the children to remain in conditions
or surroundings that endangered them and that termination would be in the children's best interest. 
She indicated that she believed the children to be adoptable, although Charlie would need
additional residential care to assist in his adjustment. The evidence showed that Charlie's
behavior worsened during foster care and that, at the time of trial, he was in a residential
treatment facility.

 Dr. Jeff Ezell testified as to his evaluation of the children and Ms. Skipper. Mr.
Skipper refused to be examined by Dr. Ezell. Dr. Ezell stated that Charlie was not a good
candidate for immediate adoption and would have problems adjusting to a termination and that,
if Mr. Skipper became a responsible parent, it would be in the children's best interest to stay with
him. Dr. Ezell admitted, however, that Charlie's expectation that he could be reunited with his
father was unrealistic.

 Dr. David Poole examined Mr. Skipper, Ms. Skipper, and Charlie and testified as
to his clinical diagnosis. Dr. Poole testified that the parents' relationship with one another was
pathological and unlikely to improve. He testified that, in addition to his drug problems, Mr.
Skipper exhibited a personality disorder that could adversely affect the care of his children and
that Mr. Skipper would be unlikely to improve without intensive therapy.

 John Westlund is the supervisor of Mr. Skipper's methadone treatment program. 
He testified that Mr. Skipper kept his appointments or called in if he was going to miss an
appointment. He testified that the program included monthly drug testing and that Mr. Skipper
was on a high methadone dosage that had not been reduced. He confirmed that Mr. Skipper had
been removed from a prior methadone program for hostile behavior, but that Mr. Skipper had no
problems in the current program.

 Russell Scheinberg provided the marital counselling, parent education, and group
chemical dependency counselling programs recommended to the Skippers. He testified that the
Skippers failed to complete marital counselling because of poor attendance, but that they had
completed the parent education program. He stated that, in his opinion, the Skippers were not
committed to completing the treatment programs.

 The evidence shows a family history of drug abuse, spousal abuse, child abuse, and
general instability. The record reflects little improvement since the original referral and little
commitment by Mr. Skipper toward improvement. While the evidence was conflicting on some
issues, this Court may not substitute its opinion on the credibility of witnesses and weight of the
evidence for that of the trial court. Pool, 715 S.W.2d at 634; Benoit v. Wilson, 239 S.W.2d 792,
797 (Tex. 1951). We conclude that there is more than a scintilla of evidence to support the trial
court's determination that there were grounds for termination and that termination would be in the
children's best interest. We also conclude that this determination was not so against the
overwhelming weight of the evidence as to be clearly wrong and unjust. For the above reasons,
we overrule points of error four and five.



Motion for Continuance and Jury Demand


 In his second point of error, Mr. Skipper contends the trial court erred in failing
to grant his motion for continuance and in denying him a jury trial. This point of error is
multifarious because it asserts error in two separate rulings in a single point. Clancy v. Zale
Corp., 705 S.W.2d 820, 823 (Tex. App.--Dallas 1986, writ ref'd n.r.e.). Accordingly, we may
disregard this point of error. Id.; Tex. R. App. P. 74(d). However, in the interest of justice, we
will address the merits of the claimed errors.

 Apparently, this case was set on the jury docket in Williamson County; however,
upon transfer to Travis County, the case was not automatically set for a jury trial. The record
does not indicate whether a written jury demand was ever filed in Williamson County. Mr.
Skipper did not file a written jury demand in Travis County until August 13, 1991. Mr. Skipper
also filed a motion for continuance on August 20, 1991. Apparently, two non-jury settings were
made, the first for August 26, 1991, and the second for September 3, 1991. There is a notice of
the second setting in the record, but no notice of the first setting. In his motion for continuance,
Mr. Skipper urged separate grounds for postponing each setting. As to the August 26th setting,
he asserted a scheduling conflict of his attorney and the lack of notice of the setting. As to the
September 3rd setting, he argued for a continuance because of his jury demand. The motion also
stated that a jury setting had been obtained for January 6, 1992.

 By written order, the trial court granting the motion for continuance of the August
26th setting. However, the court found that no timely jury demand had been filed and that further
delay would be to the extreme detriment of the children. The court concluded that Mr. Skipper
was not entitled to a jury trial and struck the jury setting; the court also found that the September
3rd non-jury setting was properly noticed and in the best interest of the children. The cause
proceeded to trial on September 3, 1991, at which time Mr. Skipper objected to the non-jury trial.

 A jury trial is not available in a civil suit unless a party files a written request for
a jury trial within a reasonable time, not less than thirty days, before the date set for a non-jury
trial and pays the jury fee. Tex. R. Civ. P. 216(a), (b). In the immediate case, Mr. Skipper filed
his request and paid the jury fee less than thirty days before both of the non-jury trial settings.

 Furthermore, Mr. Skipper not demonstrated his compliance with Rule 216 in
Williamson County. He calls our attention to references in motions filed in Williamson County
to a jury-trial setting that Ms. Skipper's attorney apparently requested. However, the record does
not include a written demand for a jury trial in Williamson County. Accordingly, Mr. Skipper
has not shown that this cause was properly set for a jury trial in Williamson County.

 Mr. Skipper also cites a docket notation in Travis County district court that, on July
2, 1991, at a hearing on a motion to withdraw of Mr. Skipper's then attorney, an oral jury
demand was made and granted. An oral jury request does not satisfy Rule 216. Mr. Skipper did
not satisfy this rule until August 13, 1991, when he filed his written demand and paid his jury fee. 
This demand was made within thirty days of the non-jury trial setting. We conclude that Mr.
Skipper has failed to demonstrate that he took proper "affirmative actions" to preserve his right
to a jury trial. See Walker v. Walker, 619 S.W.2d 196, 197-98 (Tex. Civ. App.--Tyler 1981, writ
ref'd n.r.e.).

 The decision whether a late jury demand should be granted is reviewed under an
abuse of discretion standard. Turk v. First Nat'l Bank, 802 S.W.2d 264, 267 (Tex. App.--Houston
[1st Dist.] 1990, writ denied); Forscan Corp. v. Dresser Indus., Inc., 789 S.W.2d 389, 392 (Tex.
App.--Houston [14th Dist.] 1990, writ denied); Brawner v. Arellano, 757 S.W.2d 526, 529 (Tex.
App.--San Antonio 1988, writ dism'd by agr.); Walker, 619 S.W.2d at 198. The trial court was
apparently concerned with the effect of any further delay on the children. Indeed, the children
had been in and out of foster care for over four years by the time of trial. Mr. Skipper proposed
a further delay of four months for a jury trial. In light of these circumstances, we conclude that
the trial court did not abuse its discretion in refusing a jury trial.

 Mr. Skipper argues that the court allowed removal of the case from the jury docket
over his objection in violation of Rule 220 of the Texas Rules of Civil Procedure. Rule 220
provides that "[w]hen any party has paid the fee for a jury trial, he shall not be permitted to
withdraw the cause from the jury docket over the objection of the parties adversely interested." 
Tex. R. Civ. P. 220. However, as discussed above, Mr. Skipper has failed to demonstrate that
this cause was ever properly placed on the Williamson County jury docket by any party. 
Accordingly, Rule 220 does not apply, and it was not error to set the cause for a non-jury trial
over Mr. Skipper's objection.

 Mr. Skipper also complains that the trial court erred in refusing to continue the
September 3, 1991 setting. A ruling on a motion for continuance rests within the trial court's
sound discretion and is to be reviewed in light of the facts before the court at the time the motion
is presented. State v. Wood Oil Distrib., Inc., 751 S.W.2d 863, 865 (Tex. 1988); Yowell v. Piper
Aircraft Corp., 703 S.W.2d 630, 635 (Tex. 1986). From the trial court's order, it is apparent that
the court was concerned with the best interest of the children, who had been in foster care for over
four years during the pendency of this cause. Based on our conclusion that Mr. Skipper did not
comply with Rule 216 and upon consideration of the best interests of the children, we conclude
that the trial court did not err in refusing to continue this cause beyond the September 3rd setting. 
For the above reasons, we overrule Mr. Skipper's second point of error.



Hearsay


 In his third point of error, Mr. Skipper contends the trial court erred in allowing
the admission of hearsay evidence by a Department witness.

 Mr. Skipper complains that Department witness Ms. Hailey was allowed to testify
regarding hearsay statements. Mr. Skipper complains of her testimony that he had been in federal
prison, that he had struck his daughter in the face, that he had threatened to harm his daughter,
that he had attacked Ms. Skipper with a knife and had stabbed through a closet door behind which
Ms. Skipper was hiding, that he had continued to use drugs after the Department intervened, that
he had faked drug tests, that he got into altercations with Ms. Skipper and a therapist, that the
Skippers had poor attendance at therapy sessions, and that his daughter had demonstrated
inappropriate sexual behavior.

 Ms. Hailey was the first caseworker assigned to the Skippers. She testified
regarding the history of the referrals to the Department, the Department's actions, and her expert
opinion whether Mr. Skipper and Ms. Skipper engaged in conduct that endangered the children. 
The bases of her opinion included, in addition to her first-hand observations, out-of-court
statements made by Mr. Skipper, Ms. Skipper, the children, relatives, other caseworkers, and
professionals involved in this matter. Generally, hearsay evidence may be relied upon by an
expert in forming an opinion that is relevant to the disposition of the case. Tex. R. Civ. Evid.
703. Mr. Skipper did not object to Ms. Hailey's testimony as an expert. Additionally, Mr.
Skipper agreed the evidence of threats toward the children before the first referral was admissible
for the limited purpose of showing the basis of Ms. Hailey's decision to remove the children and
her expert opinion on termination. We conclude that the hearsay was admissible as the partial
basis for Ms. Hailey's opinion.

 Moreover, to the extent the trial court may have relied on Ms. Hailey's testimony
as evidence of the events related, we conclude it is admissible. The vast majority of the alleged
hearsay consists of statements the parents made to Ms. Hailey during the course of the
Department's investigation about Mr. Skipper's violent action and threats, drug use, evasion of
drug tests, and prison history. We believe these statements are admissible as admissions of a
party opponent or as statements against interest. See Tex. R. Civ. Evid. 801(d)(2), 803(24). The
grounds for termination asserted by the Department and found by the court were (1) knowingly
placing or knowingly allowing the children to remain in conditions or surroundings that
endangered the physical or emotional well-being of the children; (2) knowingly placing the
children with persons who engaged in conduct that endangered the physical or emotional well-being of the children; and (3) failing to support the children in accordance with their ability during
a period of one year ending within six months of the date of the petition. Tex. Fam. Code Ann.
§ 15.02(1)(D), (E), (F) (West Supp. 1993). Because the first two grounds could be shown by the
failure of one parent to protect a child from the other parent, evidence of dangerous conduct of
one parent is adverse to the interest of the other parent. See D.O., 851 S.W.2d at 354; In re
B.R., 822 S.W.2d 103, 106 (Tex. App.--Tyler 1991, writ denied). Indeed, allowing a child to
remain in the care of an abusive parent may subject the passive parent to criminal liability. See
Tex. Penal Code Ann. §§ 22.04, 22.041(c) (West 1989 & Supp. 1993); Chapa v. State, 747
S.W.2d 561, 563 (Tex. App.--Amarillo 1988, pet. ref'd); cf. Florio v. State, 784 S.W.2d 415, 417
(Tex. Crim. App. 1990).

 Additionally, much of the Skippers' testimony at trial confirmed the alleged
hearsay. Mr. Skipper admitted in his testimony to altercations with Ms. Skipper, to his use of
cocaine, marijuana, and heroin, to being under the influence of cocaine while in the presence of
his children, to being violent toward Ms. Skipper in the children's presence, to holding a knife
to Ms. Skipper's throat, and to unintentionally cutting Ms. Skipper's hand in an altercation. Ms.
Skipper also testified as to violent acts by Mr. Skipper and to the Skippers' drug use. Other
alleged hearsay testimony of altercations at therapy and poor attendance and inappropriate
comments at visitation was confirmed by other witnesses.

 Mr. Skipper complains that the hearsay evidence, although admissible as the basis
of an expert opinion, should have been excluded because of its highly prejudicial nature. Mr.
Skipper did not object to the prejudicial nature of the hearsay evidence at trial. Accordingly, he
has waived any complaint. Tex. R. Civ. Evid. 103(a)(1).

 If any inadmissible evidence was admitted, however, we conclude its admission was
harmless. To show reversible error in the admission of testimony, Mr. Skipper must show that
the admission was erroneous and was reasonably calculated to cause and probably did cause the
rendition of an improper judgment. Tex. R. App. P. 81(b)(1); McKinney v. National Union Fire
Ins. Co., 772 S.W.2d 72, 75 (Tex. 1989); Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394,
396 (Tex. 1989). In reviewing a cause tried before the court, the appellate court may assume the
trial court disregarded any inadmissible evidence, if there is sufficient admissible evidence to
support the judgment. Gillespie v. Gillespie, 644 S.W.2d 449, 450 (Tex. 1982); United Interest,
Inc. v. Brewington, Inc., 729 S.W.2d 897, 902 (Tex. App.--Houston [14th Dist.] 1987, writ ref'd
n.r.e.); Fletcher v. Travis County Child Welfare Dep't, 539 S.W.2d 184, 186 (Tex. Civ.
App.--Austin 1976, no writ). As discussed above, we find extensive admissible evidence in the
record to support the trial court's judgment. We overrule point of error three.



CONCLUSION


 Having overruled all points of error, we affirm the trial court's judgment.



 

 Jimmy Carroll, Chief Justice

[Before Chief Justice Carroll, Justices Aboussie and Jones]

Affirmed; Appeal of Nancy Skipper Dismissed

Filed: June 30, 1993

[Do Not Publish]

1.   Now designated Texas Department of Protective and Regulatory Services.